In the Matter of the Application of the CITY OF NEW YORK, for a Determination as to the Manner in Which Portions of the Following Streets Shall Be Extended across the Tracks of the NEW YORK AND HARLEM RAILROAD COMPANY (Leased to NEW YORK CENTRAL RAILROAD COMPANY) in the Borough of The Bronx, City of New York: Third Avenue between One Hundred and Eighty-ninth Street and Fordham Road; One Hundred and Eighty-ninth Street from Webster Avenue to Third Avenue.

THE CITY OF NEW YORK and Others, Appellants; NEW YORK CENTRAL RAILROAD COMPANY and Others, Respondents.

First Department, May 3, 1918.

Railroads — application under Railroad Law, § 90, for determination as to manner in which streets shall cross tracks at an "additional width"— function of Public Service Commission upon such application — statutes — special permissive act for widening of street and construction of bridge over tracks not repealed by Railroad Law.

Where the city of New York, pursuant to section 442 of the charter, changed its plan and map so as to establish lines and grades for an "additional width" of Third avenue over the tracks of the New York and Harlem Railroad Company, but the purpose was to extend said avenue across the tracks and to have such crossing approximately 376 feet wide, an application by the city under section 90 of the Railroad Law for a determination as to the manner in which the street shall be extended across the tracks, i. e., whether the extension shall be above or below or at grade, is within the terms of the statute and cannot be interpreted as an application providing merely for an "additional width" over the tracks of a street running parallel with the railroad.

Since the amendment of section 90 of the Railroad Law by chapter 378 of the Laws of 1914, introducing the words "or additional width," there is no question of the right of a city to widen a street and carry it as widened across a railroad. The section does not contemplate the mere widening of a street running alongside of the railroad even though the width be sufficient completely to cross and cover the tracks, but it has reference to carrying a street or a new portion of a street either as originally existing or as widened across the tracks so as to furnish a direct line of traffic over a railroad into a street on the other side. The widening, however, must be a reasonable one and made for the honest purpose of actually carrying a street across a railroad.

The sole function of the Public Service Commission upon such an application under section 90 of the Railroad Law is to determine whether the crossing should be below, above or at grade, and it cannot go back of the resolution of the board of estimate and apportionment which recites that the necessity for the change has been duly found.

Chapter 731 of the Laws of 1905, as amended by chapter 736 of the Laws of 1907, providing for the widening of the street in question and the construction of a bridge over the tracks, is merely a permissive act and was not in effect repealed by the Railroad Law of 1914, and is not a bar to the application by the city under section 90 of the Railroad Law.

The fact that the contemplated extension will necessitate the removal of a railroad station and thus run counter to the provisions of law against taking property devoted to a railroad use, without express authority, is not a bar to the proceeding under section 90 of the Railroad Law because it has no bearing upon the Public Service Commission making its determination, and further because the city has been expressly authorized to acquire the station by chapter 643 of the Laws of 1917.

APPEAL by the City of New York and others from a determination of the Public Service Commission of the State of New York for the First District herein, and from the order made in accordance therewith, entered in the office of the secretary of said Commission on the 14th day of March, 1917.

*Joel J. Squier* of counsel [*William P. Burr, Corporation Counsel*], for the appellant City of New York.

*John P. Dunn*, for property owners, appellants.

*Edward M. Deegan* of counsel [*William L. Ransom*, attorney], for the respondent Public Service Commission.

*George H. Walker* of counsel [*Alex. S. Lyman*, attorney], for the respondents New York Central Railroad Company and another.

SHEARN, J.:

The city of New York and certain property owners appeal from an order of the Public Service Commission for the First District dismissing the city's application under section 90 of the Railroad Law (Consol. Laws, chap. 49 [Laws of 1910, chap. 481], as amd. by Laws of 1913, chap. 744, and Laws of 1914, chap. 378) for a determination as to the manner in

which portions of Third avenue between One Hundred and Eighty-ninth street and Fordham road shall be extended across the tracks of the New York and Harlem Railroad Company, namely, whether the extension shall be above or below or at the grade of said tracks.   The Commission held that it was without power to make the determination. Although a wide range of subjects are discussed in the briefs submitted, the actual issue is a narrow one.   It involves merely a construction of the plain language of section 90 of the Railroad Law and determining whether the application is within the terms of the statute.   So far as concerns the power of the Commission, it is of no moment whether the proposed extension of Third avenue is necessary or wise, or whether there was any defect in the proceedings whereby the board of estimate and apportionment determined the necessity for the extension, or whether the extension would involve the unauthorized taking of property devoted to railroad uses, or whether the same purpose might not be better achieved by action under certain permissive special acts.

Section 442 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1913, chap. 329)* gives the board of estimate and apportionment the power to change the plan and map of the city " so as to * * * widen * * * extend, alter and close existing streets " and provides the procedure to be observed.   On June 9, 1916, pursuant to section 442 of the charter, by resolution adopted by the board of estimate and apportionment, the city changed its plan and map " so as to establish lines and grades for an additional width of Third avenue over the tracks " of the railroad at the point involved.   By reference to the maps in evidence it will be seen that Third avenue, a street eighty feet in width, extending in a northerly direction for a long distance, brings up against the easterly wall of the railroad, whose tracks are depressed some sixteen feet, at a point just to the north and east of East One Hundred and Eighty-ninth street, and then turns sharply toward the east and extends along the tracks east by north until it runs into Pelham avenue about 400 feet beyond the junction of Third avenue with East One Hundred and

---

*Since amd. by Laws of 1917, chap. 632.— [REP.

Eighty-ninth street. Accordingly, Third avenue comes to a blind end, abutting on the railroad to the north, and there spreads out to the east, terminating where it merges with Pelham avenue. Therefore, although the general direction of Third avenue is northerly and, if extended along its general direction would cut diagonally across the tracks and open into Pelham avenue on the west side of the railroad (as indeed it did when it was the old highway known as Kingsbridge road prior to the depression of the tracks, which it then crossed at grade), a little over 300 feet of this stub end is, in a sense, alongside the railroad between East One Hundred and Eighty-ninth street and Pelham avenue, and permits it to be said with literal accuracy that for between 300 and 400 feet Third avenue runs parallel with the railroad. In order to accommodate the great and increasing vehicular traffic across the railroad tracks in this vicinity, it was deemed necessary to extend Third avenue across the tracks, and instead of confining the width of the bridge to such a width as it would have if there were merely an extension of Third avenue as now laid out in a northerly direction, diagonally across the tracks, it was deemed wise to have the bridge as wide as the entire distance between East One Hundred and Eighty-ninth street and Pelham avenue, which would make the bridge approximately 376 feet in width. In describing the change in the map, it will be noticed that the resolution of the board of estimate and apportionment describes it as providing for an " *additional width* of Third avenue over the tracks." This terminology was natural from the point of view of regarding the stub end of Third avenue as running for between 300 and 400 feet parallel with the railroad; but it was not the necessary way to describe the extension, and has turned out to be as unfortunate in blocking the improvement as though it had been (which of course it was not) so described for that very purpose. A more natural description of the extension of Third avenue across the tracks, considering the general direction of Third avenue and the fact that in an extension of its general northerly direction it would diagonally cross the tracks, would be " to change the map by providing for a new portion or extension of Third avenue across the tracks where in its northerly course it abuts upon the tracks and to

widen such additional portion or extension as far as East 189th Street on the westerly side and as far as Pelham Avenue on the easterly side." However the change in the map be described, the purpose is to extend Third avenue across the tracks and to have such crossing approximately 376 feet wide. This is not only plain from a consideration of the maps and the general physical layout of the situation, but is made plain from the resolution of the board of estimate and apportionment adopted June 30, 1916, which recites the approval of a map "providing for laying out an additional width of Third Avenue between East 189th Street and Fordham Road" and the "necessity that the said additional width * * * shall cross the tracks" and accordingly asks the Public Service Commission to, determine "whether the said additional width of Third Avenue * * * shall pass over or under the tracks." But the fact that the draftsman of the resolution saw fit to speak of the extension as one providing for an " *additional width* " of Third avenue across the tracks has been made the ground for the Commission's holding that it has no power to pass upon the application, which it interprets to be one merely providing for an additional width over railroad tracks of a street running parallel to the railroad, and, therefore, not an extension of a street across the tracks within the meaning of the Railroad Law. In other words, it is plausibly argued that, taking a street like Park avenue as it was before the railroad tracks were covered, running for miles along a railroad, it would be preposterous to say that a widening of the avenue, sufficient to bring it entirely across the tracks, would constitute an extension of the avenue across the tracks within the meaning of the act. That may be readily conceded, and no one makes any contention to the contrary, but we must not dispose of the question in the instant case by conjuring up some extremely dissimilar case which, even if possible, is so improbable as to be ridiculous. We should rather confine ourselves to the immediate situation, which, as I see it, plainly contemplates and calls for an extension of Third avenue in its general northerly direction across the tracks and a widening of such extended street. The question then is, shall the proceeding be dismissed and a necessary public improvement halted because the crossing

of the tracks has been called and is capable of being described as an *additional width* of the stub end of Third avenue as it spreads out from One Hundred and Eighty-ninth street to Pelham avenue? Manifestly not if it is within the terms of the Railroad Law. Section 90 of the Railroad Law, entitled "New streets across railroads," provides: "When a new street, avenue, highway or road or new portion or *additional width* of a street, avenue, highway or road * * * shall hereafter be constructed across a steam surface railroad * * * the Public Service Commission shall determine whether such street, avenue, highway or road, or new portion or additional width of a street, avenue, highway or road * * * shall be constructed over or under such railroad or at grade." The words "or additional width" were introduced into the section by chapter 378 of the Laws of 1914. Undoubtedly the occasion of the amendment was, as stated by the counsel for the Commission, a decision rendered by the Commission, whether correct or not, holding that when the city determined to carry an existing street across a railroad, and determined in connection with so doing to widen the street, the statute gave no express power to take property devoted to a railroad use such as would be taken by the extra or additional width of the street. The amendment gives this express power, and there is now no question of the right of the city to widen a street and carry it as widened across a railroad under the provisions of section 90 of the Railroad Law. It is entirely clear, too, that the section does not contemplate the mere widening of a street running alongside of a railroad, even though the width be sufficient completely to cross and cover the tracks, but that, fairly interpreted, it has reference to carrying a street or a new portion of a street, either as originally existing or as widened, across the tracks so as to furnish a direct line of traffic over the railroad into a street on the other side. But that is just what has been provided for here, and it seems unreasonable to deny the city the right to carry Third avenue across the railroad simply because, from the peculiar physical layout at this point, the stub end of Third avenue may be said to run parallel with the railroad for about 400 feet. What has happened is that Third avenue has been extended in

a northerly direction across the tracks taking the place of old Kingsbridge road, and the new portion, as thus extended, has been widened to One Hundred and Eighty-ninth street on the west and Pelham avenue on the east. The proceeding is, therefore, literally as well as in spirit within section 90 of the Railroad Law.

It has never been determined to what extent a street may be widened and as so widened carried across a railroad. There must be some limit, naturally, and the courts would not sanction any scheme to compel a railroad to cover miles of its tracks under the guise of widening a street, say for half a mile north and half a mile south and carrying it across the railroad as widened. Doubtless the widening must be a reasonable one and made for the honest purpose of actually carrying a street across a railroad. But whether providing for a crossing nearly 400 feet wide is reasonable or not, or whether there was any purpose to be unfair to the railroad, has no bearing upon the Commission's duty in the premises. The application being within the statute, it was the duty of the Commission to act, and its sole function is to determine whether the crossing should be below, above or at grade. If the proposed crossing was not within the power of the board of estimate and apportionment to provide for under its authority to change the map and plan of the city, it is open to the railroad company to question the legality of the city's action by direct attack upon it in an independent proceeding. Similarly, if, as contended by the railroad, the board of estimate and apportionment never 'did in fact determine the necessity of this change, the law affords ample relief to the railroad. But so far as the Public Service Commission is concerned, it cannot go back of the resolution of the board of estimate and apportionment, which recites that the necessity for the change has been duly found. The railroad company is quite competent to safeguard its interests as affected by such considerations.

It is contended that, as special acts have been passed dealing with a similar contemplated public improvement in this vicinity, the city should not have proceeded under the Railroad Law. Reference is had to chapter 731 of the Laws of 1905, providing for the widening of Pelham avenue at this

point and the construction of a bridge over the tracks 400 feet in width, and to the amendment of that act by chapter 736 of the Laws of 1907, which provides that the bridge to be constructed under the act of 1905 shall not go south of East One Hundred and Eighty-ninth street. It is claimed by the city that the amendment of the Railroad Law in 1914 in effect repealed these special acts, but it is not necessary so to hold and the contention is not in my opinion well founded. The act of 1905 is merely a permissive act and authorizes an agreement to be entered into to effectuate the desired result. This may have been wise, and perhaps it was necessary because the improvement necessitated the removal of the railroad station which is now built over the tracks at a point where the improvement was contemplated to cross. But a mere permissive act, offering a possible solution of the question, could not, except by express terms, deprive the city of its right to extend its streets under the provisions of the Railroad Law. This permissive act, unavailed of, should not be permitted to block a necessary improvement, vitally affecting an important section of the city.

It is further contended that the contemplated extension cannot be legally carried out because it will necessitate the removal of the railroad station, and thus run counter to the provisions of law against taking property devoted to a railroad use without express authority for so doing. There are two answers to this contention; one is that it in no respect bears upon the power of the Public Service Commission to make the statutory determination that it has been called upon to make; another, that by the Laws of 1917, chapter 643, the city was expressly authorized to acquire the station " in the manner provided by law for street purposes." This act purports to amend chapter 731 of the Laws of 1905, the permissive act above referred to, but it none the less confers upon the city authority to remove this station. But such matters are all foreign to the real question at issue, which is the power and duty of the Public Service Commission to determine whether the extension of Third avenue across the tracks of the railroad, in the manner proposed, shall be above, below or at grade. It was the duty of the Commission to make this determination, and its order, in so far

as it denied the city's application, should be reversed, with ten dollars costs and disbursements, and the matter returned to the Commission to make the determination required by section 90 of the Railroad Law.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concurred.

Determination reversed, with ten dollars costs and disbursements, and proceeding remitted as stated in opinion.