In the Matter of the Petition of the Incorporated VILLAGE OF HOBART, DELAWARE COUNTY, under Section 90 of the Railroad Law, for an Order Determining How an Extension of Railroad Avenue, in Said Village, Shall Cross the Railroad of the Ulster and Delaware Railroad Company.

Third Department, March 7, 1923.

Villages — streets — order of village trustees determining necessity for extension of street across railroad is conclusive where not appealed from — question of necessity cannot be raised on appeal from order of Public Service Commission directing construction of crossing at grade — notice under Railroad Law, § 90, of hearing before trustees is sufficient which gives notice that " resolution will be adopted " at hearing — Public Service Commission properly exercised its discretion in determining that crossing should be at grade.

The action of the board of trustees, in determining that the proposed extension of a village street across a railroad is necessary, is conclusive where no appeal is taken therefrom, and the question of necessity cannot be raised on an appeal from an order of the Public Service Commission directing the construction of the crossing at grade.

The provision in section 90 of the Railroad Law that " notice of intention to lay out such street " shall be given to the railroad company at least fifteen days prior to the making of the order is complied with by a notice to the effect that at the hearing in question " a resolution will be adopted " providing for the extension of the street across the railroad.

The Public Service Commission properly exercised its discretion in determining that the crossing in question should be constructed at grade, where it appears from the evidence that, due to the drainage conditions, it would be impracticable to construct a crossing below grade, and that the cost of an overhead crossing would be prohibitive since it would lay a burden on the municipality of more than one-third of the assessed valuation thereof, and furthermore, to construct an overhead crossing would not accomplish the purpose sought by the extension, which was to make a creamery and the railway station more accessible.

VAN KIRK and HASBROUCK, JJ., dissent, with opinion.

APPEAL by the Ulster and Delaware Railroad Company from an order of the Public Service Commission of the State of New York, dated the 25th day of October, 1922, directing that Railroad

avenue in the village of Hobart, N. Y., as extended by the board of trustees of said village, shall cross the Ulster and Delaware railroad at the existing grade of the tracks, and also from an order of said Commission, dated the 15th day of November, 1922, denying appellant's petition for a rehearing.

*Harry H. Flemming*, for the appellant.

*Ledyard P. Hale*, for the Public Service Commission.

*Donald H. Grant*, for the respondent Village of Hobart.

H. T. KELLOGG, Acting P. J.:

The board of trustees of the village of Hobart, N. Y., adopted a resolution to extend a street in the village, known as Railroad avenue, across the tracks and right of way of the Ulster and Delaware Railroad Company. The municipality thereafter applied to the Public Service Commission for an order determining whether the proposed extension should be made at grade, below grade or above grade. Thereafter the Public Service Commission made an order directing that the extension be made at grade. The Ulster and Delaware Railroad Company has appealed from the order thus made by the Public Service Commission.

The appellant contends that the proposed extension of Railroad avenue is unnecessary. It is a sufficient answer thereto that the board of trustees of the village of Hobart, having determined that the proposed extension was necessary, its determination, not having been appealed from, was conclusive. (Village Law, § 146, as amd. by Laws of 1916, chap. 10; Railroad Law, § 90, as amd. by Laws of 1921, chap. 698.) The appellant also contends that the board of trustees made its determination without having given to the appellant due notice of a hearing at which the necessity of the extension would be considered. It is provided in section 90 of the Railroad Law as follows: " *Notice of intention* to lay out such street, avenue, highway or road, or such new portion or additional width of a street, avenue, highway or road, across a steam surface railroad shall be given to such railroad corporation by the municipal corporation at least fifteen days prior to the making of the order." It is further provided therein that such notice shall designate the time when and place where a hearing will be given to such railroad company and that such railroad company shall have the right to be heard upon the question of the location of the highway. The village of Hobart did give to the appellant fifteen days' notice of a hearing upon the matter of the proposed extension and the appellant attended at such hearing and made opposition. It now complains of a statement in this notice to the effect that at the hearing in question " a resolution *will be adopted* altering Railroad avenue, in said village,

App. Div. 595]        Third Department, March, 1923.

by extending it across the railroad lands of the Ulster and Delaware Railroad Company." The distinction between a " notice of intention to lay out " a street which the statute calls for, and a notice that at a certain hearing " a resolution will be adopted " laying out such street, is not apparent. We consider that the notice given was sufficient and that the proceedings were properly instituted. The only question reviewable upon this appeal, therefore, is the question whether or not the Public Service Commission, in determining that the extension should be made at grade, rather than below grade or above grade, properly exercised that discretion in the matter which had been committed to it. (Railroad Law, §§ 90, 91, as amd. by Laws of 1921, chap. 698.)

The railroad right of way at the point in question extends approximately east and west. Paralleling the right of way and immediately to the south thereof is a street known as Creamery street. Paralleling the right of way on the north and about 370 feet therefrom is a street called Main street. From Main street there comes down to the right of way and approximately at right angles thereto, a street known as Railroad avenue. The lines of this street, if the same were carried across the right of way and across Creamery street, would connect up with the westerly and easterly lines of Cornell avenue which comes up from the south to intersect Creamery street at a right angle. The proposed extension of Railroad avenue will cover a distance of about 200 feet and will be made wholly upon the railroad right of way. It will make a connection between Main street and Creamery street. The passenger station and freight station of the Ulster and Delaware Railroad Company are located slightly to the east of the proposed extension, the former to the north and the latter to the south of the railway tracks. About 200 feet to the east of the proposed extension and to the south of the railway tracks is a creamery station operated by the Sheffield Farms Company. Fifty men are employed at this creamery and forty-six patrons deliver milk there. The need of the street extension in question, if any, lies in the fact that a large number of the creamery patrons will come down Main street from the east and turning into Railroad avenue will cross to Creamery street and by means of the latter street obtain access to the creamery. Proof was given before the Public Service Commission that a crossing of the railroad right of way underneath its tracks would be impracticable. This appeared from the fact that any street excavation made would be flooded by the waters of a neighboring stream. Proof was given that an overhead crossing was equally impracticable. It was shown that any overhead structure suitable for travelers must extend on the north to Main street and on the

south across Creamery street and 250 feet down Cornell avenue. Such a structure would almost wholly occupy Railroad avenue. It would cut off access to the railway stations and the creamery from the business houses and residences upon Railroad avenue. Moreover, it would make Creamery street and, therefore, the creamery of the Sheffield Farms 'Company, inaccessible to the patrons of that creamery. Thus the very purposes, to serve which the street extension has been directed, would be defeated. More-over, there was proof that the cost of such a structure would be prohibitive. The village of Hobart contains about 600 people and the appraised value of all the property therein situate does-not exceed $285,000. Yet the proposed structure will cost not less than $200,000, one-half of which will have to be borne by that municipality. (Railroad Law, § 94, as amd. by Laws of 1921, chap. 698.) It would, therefore, seem that the Public Service Commission was well within the exercise of a just discretion in determining that the crossing in question should be made at grade.

The order should be affirmed, with costs.

KILEY and HINMAN, JJ., concur; VAN KIRK, J., dissents with an opinion, in which HASBROUCK, J., concurs.

VAN KIRK, J. (dissenting):

The trustees of the village of Hobart, N. Y., have determined that a public street should be opened across the tracks of the Ulster and Delaware Railroad Company No appeal was taken from this determination. The Public Service Commission has ordered that this crossing should be made at grade and the appeal is from this order.

Hobart is a village of about 600 people. The railroad runs substantially east and west through the village. There are already three grade crossings westerly, and within approximately 1,800 feet, of this proposed crossing, the nearest of which is about 1,000 feet distant. The railroad freight house and a creamery are on the south side of the track near this proposed crossing. Those in the village, or coming into it north and east of Railroad avenue, would have to travel about 2,000 feet farther to reach the railroad station or the creamery by the present streets and crossings than if the proposed crossing is made. To a person walking three miles an hour this requires less than a ten-minute walk. Those living south of the railroad tracks, or west of Maple avenue, are not affected. The proposed crossing lies through the yard of the railroad company, near its center, where there are four tracks. It is a single-track railroad and this is a train passing point. One side track is kept open for passing trains and two are used for the

receiving and delivery of freight cars. The milk trains, usually carrying from eight to twelve cars, stop at the creamery. It is a point for icing these cars. If this public grade crossing be made, all long freight trains, which stop in the yard, must be cut to clear the street. The cars standing on the side tracks and the cut trains will obstruct the view in either direction and increase the hazard to the traveling public; also the moving and shunting of cars on these side tracks will add to the hazard. There is now a private crossing, the right to use which was reserved in the deed of its right of way to the railroad company, about 200 feet easterly of the proposed crossing. The public to be served by the proposed crossing is largely made up of the patrons of the creamery, who now use this private crossing. It is crooked and not kept in condition as a public street; it is, therefore, not much used by the traveling public generally. The milk trains and other trains standing in the yard are not cut to keep this private crossing clear. The three grade crossings to the west are outside of the yard and where but a single track is crossed. When the proposed crossing is constructed a straight public street will be furnished, connecting with present streets, and will be used by the traveling public generally, many of whom will not be familiar with the surroundings, as are the patrons of the creamery. The cost of an overhead crossing is estimated to be approximately $200,000, one-half of which would be paid by the railroad company (Railroad Law, § 94, as amd. by Laws of 1921, chap. 698), and such a crossing would not be convenient for the creamery traffic.

That the proposed crossing will be more convenient to the patrons of the creamery and a few going to the freight station is the chief reason why its construction is held necessary.

The evidence was taken in Hobart before E. D. Burkart, assistant engineer; the order of the Commission was made in Albany. It does not appear that any of the Commissioners viewed the premises. No opinion was written and no findings made; but, in the order is this: " and it appearing that the board of trustees of said village had extended Railroad avenue across said railroad after a hearing on the necessity therefor had been granted said company as provided by law, that an undergrade crossing of the railroad at this point would be impracticable on account of drainage conditions; and that an overgrade crossing of the railroad would also be impracticable on account of prohibitive cost, it is ordered: That Railroad avenue as extended by the board of trustees of the village of Hobart shall cross the Ulster and Delaware railroad at the existing grade of the tracks." This is the only intimation we have of the reason for ordering a grade crossing.

If the overhead crossing would place an undue expense upon the municipality, we do not think it follows, as the Commission seems to think, that a grade crossing must be ordered. After the local authorities have decided that the street is necessary, the Commission cannot consider the question of this necessity (*Matter of City of New York* [*Third Ave.*], 183 App. Div. 688; *Matter of City of New York* [*84th Street*], 189 id. 315); but the Commission is still free to say that a grade crossing may not be had. It may order an overhead or an undergrade crossing. It matters not that either of these will cost considerable money; the grade crossing will cost life. The latter, not the former, is the prohibitive cost. We may not ease our minds with groundless hope and say there may be no deaths occasioned at this crossing. We have no more deadly traps, no more authorized perils, to surprise victims, than grade crossings in villages and cities. It seems to us no answer to say that gates and watchmen may be maintained by the railroad. Such devices do not eliminate accidents, as frequent cases in the courts demonstrate. In the matter of this crossing the safety of the traveling public, from which are selected the victims of vicious grade crossing constructions, is the chief consideration. It is true that a victim who survives his injuries at a grade crossing may recover what we call compensation and the next of kin of one killed gets some compensation for the financial loss suffered by the death, but money does not restore or compensate for life, and grade crossings take life. In addition, the policy of this State is to eliminate grade crossings wherever possible. If this grade crossing be ordered and constructed, the Public Service Commission, upon its own motion may immediately institute proceedings and close or eliminate it. (Railroad Law, § 95, as amd. by Laws of 1913, chap. 354; *Matter of New York Central Railroad Co.*, 177 App. Div. 444; affd., 222 N. Y. 541.) The corollary of this is, the State's policy is against permitting them. The Commission having ordered either the overhead or undergrade crossing, it will be left to the local authorities, who have found the necessity, which I do not find, to say whether that necessity justifies the cost.

The rules which govern the appellate court in review of orders of the Public Service Commission are established. " ' This mode of proceeding, while it grants the court power to review the action of the commissioners, plainly indicates that the court is to treat the application as in the nature of a review of the decision of a subordinate tribunal, and not as it would an original application made to it in the first instance. The burden rests upon the petitioner to show affirmatively that the commissioners erred in their determination.' * * * Unless the court can see that the

decision of the Board of Railroad Commissioners was founded upon erroneous legal principles, or that it proceeded contrary to the clear weight of evidence in arriving at its conclusion upon any question of fact, or that it has abused the discretion vested in it, and has arbitrarily refused to issue the necessary certificate, I do not think that the court should reverse its determination." (*Matter of Amsterdam, J. & G. R. R. Co.*, 86 Hun, 578, 581; *Matter of New Hamburgh R. R. Co.*, 76 id. 76; *People ex rel. New York & Queens Gas Co.* v. *McCall*, 219 N. Y. 84, 88.) The questions to be determined under a certiorari order to review the determination of a body or officer (Civ. Prac. Act, § 1304; Code Civ. Proc. § 2140) are stated as follows:

" The questions involving the merits to be determined by the court upon the hearing are the following only: * * *

" 4. Whether there was any competent proof of all the facts necessary to be proved in order to authorize the making of the determination.

" 5. If there was such proof, whether, upon all the evidence, there was such a preponderance of proof against the existence of any of those facts that the verdict of a jury, affirming the existence thereof, rendered in an action in the Supreme Court triable by a jury, would be set aside by the court as against the weight of evidence."

This statute states proper rules to apply as well upon a review on appeal of the order of the Commission.

The record in this case discloses, either that the Public Service Commission granted this order under a mistaken view of the law, or outside the limits of a reasonable discretion. In *Matter of Town Board of Royalton* (138 App. Div. 412) the Public Service Commission, in a case which in its facts is very similar to the instant case, ordered an overhead crossing and the appeal was from that order. There, as here, it was claimed that the cost of such overhead crossing was prohibitive. It was argued by the appellant that it was a physical impossibility to construct a crossing above or below the railroad and serve the public use for which its construction was necessary, and, therefore, the only crossing which the Commission could order was a grade crossing. This argument the Appellate Division disapproved and affirmed the order of the Commission. In one very material fact that case differs from this; it does not appear that the crossing was through the yards of the railroad company.

Necessity is a matter of degree. In respect to streets and highways it is associated with public convenience and benefit. The public convenience and benefit may create a necessity for a

highway through an open field when it will not, for example, through a manufacturing establishment including its yard (Highway Law, § 200\*); still through these in exceptional cases the County Court may order the road laid out. Public convenience is often measured against the money cost in determining necessity. Likewise, if there were no other location for crossing a railroad, no means of passing it other than through the railroad yard at grade, the Commission may still order a grade crossing. There must be some special necessity, which nothing else will answer, to justify ordering a grade crossing through a railroad yard. The public convenience and benefit must yield to the public safety. In this case, where the proposed crossing must pass over four tracks in the railroad yard, while outside the yard there are convenient near at hand crossings, where there will be frequent and constant obstructions to the view in either direction from the street, where there will be the moving of trains and the transfer of cars upon side tracks, where there will be a constant hazard to those traveling upon this street and where the court is called upon to measure the value of lives and the fixed policy of the State against the money cost of construction, I feel that we should hold in our discretion (*New York & Queens Gas Co.* v. *McCall, supra*) that the order of the Commission should be reversed and a rehearing granted.

HASBROUCK, J., concurs.

Order affirmed, with ten dollars costs and disbursements.

---

\* See Laws of 1921, chap. 10, and Laws of 1922, chap. 18, amdg. said § 200.— [REP.