In the Matter of the Proceeding, under the Grade Crossing Elimination Act, for the Elimination of the Existing Highway-Railroad Crossings at Grade of the Railroad Operated by THE NEW YORK CENTRAL RAILROAD COMPANY and CEDAR STREET, HARVESTER STREET, SWAN STREET, LIBERTY STREET, ELLICOTT STREET, JACKSON STREET, EVANS STREET and WALNUT STREET in the City of Batavia, Genesee County. (Case No. 5936.)

In the Matter of the Proceeding, under the Grade Crossing Elimination Act, for the Elimination of the Existing Highway-Railroad Crossing at Grade of the Railroad Operated by LEHIGH VALLEY RAILROAD COMPANY and SOUTH JACKSON STREET in the City of Batavia, Genesee County. (Case No. 6500.)

In the Matter of the Proceeding, under the Grade Crossing Elimination Act, for the Elimination of the Existing Highway-Railroad Crossings at Grade of the Railroad Operated by THE NEW YORK CENTRAL RAILROAD COMPANY (CANANDAIGUA BRANCH) and CEDAR STREET, WEBSTER STREET, HARVESTER STREET, SWAN STREET, LIBERTY STREET, ELLICOTT STREET and JACKSON STREET and of the Highway-Railroad Crossings at Grade of the ATTICA BRANCH of Said Company's Railroad and EVANS STREET, MAPLE STREET and LAW STREET in the City of Batavia, Genesee County. (Case No. 7685.)

In the Matter of the Proceeding, under the Grade Crossing Elimination Act, for the Elimination of the Existing Highway-Railroad Crossing at Grade of the Railroad Operated by LEHIGH VALLEY RAILROAD COMPANY and/or THE LEHIGH VALLEY RAIL WAY COMPANY and CLIFTON AVENUE in the City of Batavia, Genesee County. (Case No. 7686.)

THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant; CITY OF BATAVIA, Respondent.

[Fourth Department, January 5, 1939.

*Howard R. Sturtevant,* for the appellant.

*Harry M. Chamberlain,* for the respondent Public Service Commission.

*William H. Coon, City Attorney,* for the respondent City of Batavia.

SEARS, P. J.   The New York Central Railroad Company on this appeal attacks the validity of a plan of the Public Service Commission for the elimination of grade crossings of streets of the city of Batavia by the railroad lines of the New York Central Railroad Company.   The Lehigh Valley Railroad Company was also a party to this proceeding but has not appealed from the determination here under review.

The main line of the New York Central Railroad Company runs from east to west through the city of Batavia in a part of

the city which is well developed. It has four main line tracks and several sidings which cross at grade eight highways in the city of Batavia. Batavia, according to the last Federal census, has a population of 17,380 inhabitants. According to counts made in July, 1930, the greatest traffic at any of these crossings was at the Ellicott street crossing where the count showed a daily average user of 5,047 vehicles, 2,554 pedestrians, 85 trains and 48 light locomotives and switching movements. The crossing least used was at Cedar street where the average daily use was 449 highway vehicles, 98 pedestrians, 83 trains and 15 light locomotives and switching movements. Highway crossings at grade by two branch lines of the railroad are also involved in the plan but need not be specifically considered as the chief criticism of the plan relates to the main line of the railroad. It is agreed between the parties that the present situation calls for remedy, but the railroad contends that the plan approved by the Public Service Commission is invalid as matter of law; or, to put it in another way, that it is arbitrary and capricious. It will be impossible to describe the plan in detail. A general description will have to suffice.

The plan contemplates building a new main line railroad from a point 1,000 feet or slightly more west of the city line of the city of Batavia to a point about 3,000 feet east of the east line of the city of Batavia. This involves the construction of a new four-track main line over a distance of three and two-thirds miles which is at least one mile longer than the present main line between the two points indicated. By this construction the through main line will be diverted to the southerly part of the city and will be carried through the city on an embankment, for the most part passing over the streets which it crosses. No criticism is directed to the street-crossing features of the adopted plan. The passenger railway station is relocated about a mile southeast of the present station, the present station being near the business section of the city. Along the line of the present main right of way are a number of industries, and, to serve these industries, it is contemplated by the plan that there shall be retained one or possibly two tracks where the main line is now located to serve as a lead or leads to the switches to the industrial plants. This retained line of railway with limited use will continue to cross at grade seven of the eight highways now crossed by the main line of the railroad. It is planned to serve these plants from the west and the tracks will come to an end half a mile or a little more west of the east line of the city of Batavia. A relocation of the railroad's yards will diminish the track movements for other than through train service from an eighth to a half. The carrying out of the plan will involve

a total expenditure estimated at something more than $4,000,000. Against this plan the railroad urges several impressive objections. It will leave grade crossings of seven important highways. The use of these crossings by the railroad will be lessened, to be sure, from their present use, still they involve danger, and it is said that the plan is objectionable as a grade crossing elimination because it does not eliminate the most dangerous crossings. It is urged that it will be detrimental of the railroad's interest unnecessarily. It will lengthen the main route of the New York Central Railroad Company by at least a mile and thus increase operating costs. It will place the passenger station in a much less accessible site and will thus tend to diminish the use of the railroad, particularly in view of bus competition. As to the cost, the railroad asserts that a better plan with a complete elimination of all main line crossings involving the construction of viaducts carrying all main streets over the railroad tracks could be carried Lout with an expenditure of more than $1,000,000 less than the approved plan would involve. According to the railroad estimate, the saving would be more than $1,500,000. A plan proposed by the railroad with streets passing over the tracks was presented to the Public Service Commission and is before us on this appeal. It is not within the province of this court to compare plan with plan and pass on their comparative merits. That is an engineering question, and that question lies exclusively within the province of the Public Service Commission. (*People ex rel. N. Y. & Queens Gas Co.* v. *McCall*, 219 N. Y. 84, 681; affd., 245 U. S. 345; *People ex rel. Consolidated Water Co.* v. *Maltbie*, 275 N. Y. 357; *Niagara Falls Power Co.* v. *Water Power & Control Comm.*, 267 id. 265.) There is nothing in this record which calls upon us to exercise any discretion which would necessitate sending the matter back for a new hearing. (*Matter of Grade Crossings* [*New York Central R. R. Co.*], 255 N. Y. 320.) The question here is one of law and the plan proposed by the New York Central Railroad Company is usable on this appeal only as bearing upon the question of whether the present plan is arbitrary because of unnecessary expense, or on the other grounds already referred to. We must view the problem which was before the Public Service Commission and the approved solution as a whole. It is not fatally defective because switching leads are left as crossings. Thus in *McCutcheon* v. *Terminal Station Comm.* (217 N. Y. 127, 156) it was said in the course of the opinion: " The plan adopted by the contract must be considered as a whole, and when this is done it is seen that viewed simply from the standpoint of eliminating grade crossings it is not subject to objections of the character which are made. Main street is the important street,

and prior to the contract was crossed by five tracks at grade. By the arrangement in question four of these crossings have been eliminated and the remaining one is maintained for restricted purposes. It has been found by the court that the preservation of this track and the construction of the additional pieces of track west of Main street are necessary and proper in order to carry out the plan which results in the elimination of the crossings as aforesaid." It is evident that these switch tracks crossing seven highways present a danger to the public and are a most unsatisfactory part of the plan. It is here rather than in relation to expense or operating disadvantage that the plan is most vulnerable, and, in fact, presents what seems to us a border line question. Nevertheless, taking the plan as a whole, regarding the dangers which it is intended to eliminate and the advantages to be accomplished, we are not able to say that the Public Service Commission which studied the situation long and evidently most carefully has favored a solution which is arbitrary or capricious. Such being our view, it is our duty to affirm the order appealed from, but we affirm, without costs.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, TAYLOR and DOWLING, JJ.

Order affirmed, without costs.