In the Matter of ARTHUR P. MONK et al., Individually and on Behalf of Other Tenants of the PARK ROYAL HOTEL, Similarly Situated, Petitioners, against MAURICE FINKELSTEIN et al., Constituting the Temporary City Housing Rent Commission of the City of New York, et al., Respondents.

Supreme Court, Special Term, New York County, December 13, 1948.

*Louis N. Field* for petitioners.

*Irving S. Freedman* for Park Royal, Inc., respondent.

*Nathan W. Math, Joseph Jay* and *Herman A. Kaplan* for the Temporary City Housing Rent Commission of the City of New York, respondent.

BOTEIN, J. The lot of an administrative agency making quasi-judicial or administrative determinations subject to judicial review is never a happy one (see Report of Commissioner Robert M. Benjamin on Administrative Adjudication in the State of New York). This is evidenced by the countless judicial decisions reviewing the determinations of well-established governmental agencies; agencies enjoying a uniform, self-regulating inflow of business and operating under rules, regulations and formulae fashioned and refashioned from the impacts of experience.

Even more precarious is the position of a temporary agency created to cope with an emergency. With few, if any, norms distilled from experience, it must breast a sudden mobilization of accumulated, long festering problems. Small wonder that such temporary agencies often tend to function through the formulation and application of rigid, unvarying formulae. Two considerations come immediately to mind which probably commend this practice to administrators. First, it lends itself to

speedy disposition of the deluge of pending matters by diminishing individual consideration. Second, it dispels suspicion of the practice of discrimination among the cases.

The difficulty arises when a situation stubbornly repels reasonable resolution under the administrative formula. An administrator may not, with Procustrean indifference, stamp the same mold upon every set of facts. Sometimes anything other than an *ad hoc* consideration inclines *ad absurdam*.

The instant proceeding presents particular circumstances which render fantastic a formula which in most instances might prove fair and feasible. This is an article 78 proceeding brought by tenants of the Park Royal Hotel to review and declare void as arbitrary and unlawful an order of the temporary city housing rent commission authorizing the hotel to increase the over-all rents of all tenants by $7\frac{1}{2}\%$. The order was made in purported pursuance of Local Law No. 54 of 1947, which imposed emergency controls in New York City upon certain decontrolled premises, established the commission for the administration of those controls, and allowed for individual adjustments of maximum rentals by directing the commission to " make such adjustments in such maximum rents as may be necessary to correct inequities " (Local Laws, 1947, No. 54 of City of New York, § 1, adding Administrative Code, § U41–6.0, subd. c). Under the interpretation by the commission of the aforesaid provision, " hardship adjustments " are made to insure a return of $6\%$ on the present value of the owner's investment (see Friedlander and Curreri, Rent Control [1948 ed.], pp. 312–316; appendix I, pp. 301–304), and in accordance therewith the increase here complained of was granted.

It seems clear from a reading of the commission's brief that in all cases where adjustments have been sought on the basis of " hardship ", the test applied was that of fair return (namely $6\%$) upon the present value of the property. And in determining the present fair value of the properties involved in the applications, the commission has adopted as prima facie evidence thereof the judicially determined assessed valuation of the land and building. In the instant case the commission's fixation of fair present value was based exclusively upon the current assessed valuation.

It is undisputed that the present owner purchased the hotel, including land, building and equipment, on or about May 1, 1945, for \$750,031.41. Part of the purchase price included the assumption of a mortgage of \$450,667.81, and upon the sale the

purchaser obtained a purchase-money mortgage of $245,000. Consequently, the initial cash investment of the present owner came to approximately $50,000. In February, 1947, the mortgages on the property were replaced with a new mortgage of $850,000. By this transaction the purchaser recouped its initial cash investment plus $100,000, in addition to retaining the equity.

In 1946, prior to the increase here in issue, a substantial increase, over and above then prevailing rent ceilings, was granted by the United States Office of Price Administration. Late in 1947, the commission denied an application for an additional increase. The owner promptly applied for a reconsideration of the denial and that application resulted in the presently disputed increase. Upon reconsideration the commission found the " fair value " of the owner's investment to be $1,375,000 (the sum of the last judicially determined assessed valuation for the land and building plus the commission's valuation of the hotel's furniture and fixtures). It found that the projected net income for the ensuing year, after adjustments for anticipated increased operating costs, was $66,534.11, which was $19,265.89 less than a return of 6% upon the " fair value " of the investment. It was upon the foregoing calculations exclusively that the commission allowed the 7½% increase in rents, calculated to produce the $19,265.89 required to bring the owner a return of 6%.

It should be noted that the commission fixed the present " fair value " of the owner's investment at almost twice the investment actually made less than three years before. Also, undoubtedly, the assessed valuation upon which the commission based its decision was in turn much higher because of the substantial rental increases previously granted by the Office of Price Administration.

But the formula employed by the commission is not dictated by any constitutional considerations (*Matter of Fifth Madison Corp.* [*New York Tel. Co.*], 297 N. Y. 155, 162–163), nor does Local Law No. 54 expressly prescribe the use of that formula. In contrast with other rent control statutes (L. 1945, ch. 3, § 4, as amd.; L. 1945, ch. 314, § 4, as amd.; see, also, *Wilson* v. *Brown,* 137 F. 2d 348, 351–354), Local Law No. 54 makes no provision for a " fair return " but directs only the correction of inequities. It has been held that a rent control statute similarly lacking an express instruction to fix rents yielding a " fair return " on the " fair value of the investment " permits

the use of a different formula (*315 West 97th St. Realty Co.* v. *Bowles,* 156 F. 2d 982; *Wilson* v. *Brown, supra*). Accordingly, I conclude that Local Law No. 54 does not, expressly or implicitly, require that the commission must raise rentals wherever the owner realizes annually less than 6% of the fair value of his investment.

Further, although not asserted herein, it could be urged that the formula as used by the commission is inherently defective and beyond the area of discretion allowed the commission by Local Law No. 54. Rent fixing must be viewed in proper perspective as a regulation, not a taking, of property (*Bowles* v. *Willingham,* 321 U. S. 503, 516–519). In that perspective " fair return " concepts may often become irrelevant and inapplicable.

Moreover, tax values are based upon factors unrelated to rent-fixing purposes (see *315 West 97th St. Realty Co.* v. *Bowles, supra,* p. 985); and to use " fair value " as a basis for fixing rentals is to confuse the product with its ingredients. " ' Fair value ' is the end product of the process of rate-making not the starting point   *   *   *. The heart of the matter is that rates cannot be made to depend upon ' fair value ' when the value of the going enterprise depends on earnings under whatever rates may be anticipated.'' (*Federal Power Comm.* v. *Hope Natural Gas Co.,* 320 U. S. 591, 601.) The owner who obtains a rent increase under the commission's formula thereby increases the " fair value " of his investment and perforce lays the foundation for a subsequent increase.

To illustrate: the assessed valuation of this hotel was raised sharply because of the higher rents collected following the previous directive of the Office of Price Administration. The order presently under review based value exclusively upon the assessed valuation. Should the increase ordered by the commission go into effect, the increased profits of operation of the hotel would undoubtedly cause an increase of several hundreds of thousands of dollars in the assessed valuation. Thereupon, the owner, under the commission's " hardship " formula, would be entitled to have the value of the hotel fixed at the assessed valuation and upon that " fair value ", secure another sharp rise in rents. And so *ad infinitum.*

Happily, however, it is not my responsibility to affirmatively formulate standards, but to strike down the standard as applied *in this matter* only in the event that " it was an unlawful, arbitrary or capricious exercise of power.'' (*People ex rel. New York & Queens Gas Co.* v. *McCall,* 219 N. Y. 84, 89.) For, by

its terms, Local Law No. 54 neither precludes nor prescribes the formula as used by the commission, and it would appear that the formula may be employed under appropriate circumstances. Thus, it has been held in another instance where rentals were raised to yield an owner 6% of the " fair value " of his investment, " we are unable to say that the commission's approach and action *in this case* were contrary to law or proper practice." (Italics added. *Matter of Mouakad* v. *Ross,* 274 App. Div. 74, 76.) In *Matter of Beekman* v. *Ross* (274 App. Div. 292, 293) the same court sustained the use of the formula where the commission considered in addition to the assessed valuation " other appropriate evidence relating to value, to the nature and quality of the service rendered, and to the comparable rentals received for similar accommodations ". The inquiry upon judicial review is the legal propriety of the particular application of the formula. Consequently, while the application of the formula may not be invalid per se, the use of the formula in the instant case is such an arbitrary and unreasonable exercise of the discretion lodged in the commission that it may not be sustained by a court of equity.

In passing upon the owner's application the decision of the commission appears to be based exclusively upon insuring the owner a return of 6% on the " fair value " of the investment. In those calculations no allowance was made for the circumstance that the projected annual net income exceeds 125% of the initial cash investment of the owner and that the increased annual net income would exceed 150% of the initial cash investment.

Of course, a return in excess of 6% on cash investment or fair value need not necessarily foreclose a rent increase. The owner is not to be penalized for the advantageous bargain obtained upon the purchase of the hotel. But it may not receive individual exemption from the uniform operation of the rent control law without any regard for the magnitude of the return upon its cash investment, where it does not appear that the rental received is less than rentals for similar accommodations, or that the increase is otherwise warranted by the nature and quality of the services rendered by the hotel (*Matter of Beekman* v. *Ross, supra*); where there is no indication that the projected profits do not conform to the profits earned prior to the imposition of controls (see *315 West 97th St. Realty Co.* v. *Bowles, supra*); and where it does not appear that past or projected net income is insufficient to permit successful physical opera-

tion of the hotel and the servicing of the owner's debt structure. I consider that the fixation of rent by the commission here exclusively upon the basis of its " fair return " formula and apparently without regard for any of the other relevant factors cited cannot be sustained. It is evident that the commission was empowered to make hardship adjustments in order to safeguard owners from immutable rental ceilings. It would be anomalous if in the exercise of that power the commission was authorized to employ a rigid and inflexible formula, irrespective of the merits of its individual application; if it were not to accommodate, case by case, the public interest in freezing rentals at a certain level and the individual landlord hardships occasioned by such a general freezing process.

Consequently, I hold that the order herein must be set aside as arbitrary and unlawful for the reasons stated. This is not to say that the commission may not find the owner entitled to a rent increase upon a proper evaluation of *all* the pertinent factors herein, including but not limited to the value of the investment; nor is this to say that no rent increase may be allowed if the owner is earning more than 6% of his actual investment. I hold no more than that upon the state of the record before me in this case the increase allowed was unreasonable and unauthorized in that it would yield an additional income to a landlord already enjoying a handsome return upon its cash investment without a showing of other circumstances which would indicate that the impact of Local Law No. 54 subjects that landlord to any real inequities. Settle order in accordance with the foregoing.