PEOPLE ex rel. NEW YORK & QUEENS GAS CO. v. McCALL et al., Public Service Commission for First Dist.

(Supreme Court, Appellate Division, First Department. March 3, 1916.)

1. GAS ☞1—PUBLIC SERVICE COMMISSION—REVIEW OF ORDER—STATUTE.

Under Public Service Commissions Law (Consol. Laws, c. 48) § 66, subd. 2, empowering the commission to order reasonable improvements and extensions of the lines, conduits, and other apparatus and property of gas corporations, the court may determine, upon a review of the determination of the commission, whether an order for the extension of the mains of a gas corporation was a reasonable extension.

[Ed. Note.—For other cases, see Gas, Dec. Dig. ☞1.]

2. GAS ☞1—EXTENSION OF MAINS—REASONABLENESS.

An order of the Public Service Commission requiring relator, a gas company supplying the town where its plant was located and the adjoining town with gas, to extend its mains to serve a community of about 230 houses, already supplied with electric light, so that gas would not be required for illuminating purposes, but only for cooking and possibly heating during the summer months, none of which houses were piped for gas, and requiring substitution of 6-inch pipes for 4-inch pipes for a distance of 5 miles, which, upon the estimated consumption at the price the company was authorized to charge, would give a net income of about $1,660 a year, allowing nothing for interest on bonds or dividends on stock, and presumably requiring the company to borrow from $60,000 to $70,000 for the new construction, the interest on which would exceed the net income, was unreasonable, and would be annulled.

[Ed. Note.—For other cases, see Gas, Dec. Dig. ☞1.]

Certiorari by the People, on relation of the New York & Queens Gas Company, to review an order of Edward E. McCall and others, commissioners, constituting the Public Service Commission of the State of New York for the First District, requiring the relator to extend its mains and services to Douglaston, including Douglas Manor. Determination annulled, and application of petitioners denied.

Argued before CLARKE, P. J., and DOWLING, SMITH, PAGE, and DAVIS, JJ.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John A. Garver, of New York City, for relator.
William H. Van Steenbergh, of New York City, for Douglaston Civic Ass'n.
Arthur Du Bois, of New York City, for respondents.

SMITH, J.  The New York & Queens Gas Company has its headquarters and manufacturing plant in Flushing, Long Island, and is at present engaged in supplying that town and the adjoining town of Bayside with gas.  East of Bayside a marsh bisected by a navigable creek extends for somewhat over a mile, and east of this marsh are situated the towns of Douglaston and Douglas Manor.  The order of the Public Service Commission reads in part as follows:

"Ordered that the New York & Queens Gas Company, be and hereby is directed to extend its mains and gas services in such a manner as may be required reasonably to serve with gas that community lying in the Third ward of the borough of Queens, city of New York, and known as Douglaston, including Douglas Manor."

[1] It is the propriety of this order that it is sought to have reviewed in this proceeding.

Public Service Commissions Law, § 66, subd. 2, empowers the commission:

"To order reasonable improvements and extensions of the works, wires, poles, lines, conduits, ducts and other reasonable devices, apparatus and property of gas corporations, electrical corporations and municipalities."

We have no doubt that under this law the question remains for the court to determine, upon the review of the determination of the Public Service Commission, whether the extension ordered was a reasonable extension. ' This question must be considered in the aspect, first, of the needs of the community; and, second, of the burden placed upon the company.

[2] First. Douglaston and Douglas Manor have about 230 houses built.  The place is supplied with electric light, so that the gas in question will not be required for illuminating purposes, but only for the purpose of cooking and possibly for heating during the summer months.  None of the houses which have been erected are piped for gas, indicating that it was not the expectation of those who built the same that gas would be furnished.  If this gas were needed for illuminating purposes, as well as for heating and cooking, the necessity would be much more imperative, and an entirely different question might be presented.

Second. For a distance of five miles from the gas house in Flushing to the end of the main at Bayside the mains of the company would have to be changed, and 6-inch pipes substituted for 4-inch pipes, which now exist.  For a mile from the end of the main in Bayside there will be no consumers of gas, as the mains pass through marsh land, where there are no residences.  From the records of the company it appears that for the gas furnished the manufacturing and distributing expenses amount to 72.7 cents per 1,000 feet.  This does not include any interest upon the moneys invested, and the company has

never declared a dividend. This leaves 27.3 cents per 1,000 feet upon the price of $1 per 1,000 feet which the company is authorized to charge. A very liberal estimate of the gas which will be consumed in the houses already constructed in Douglaston, Douglas Manor, and Little Neck has been given as 6,075,000 cubic feet. Upon this estimate, at 27.3 cents per 1,000, there will be an income to the company, over and above the cost of manufacturing and distributing, of about $1,660 per year. This, as before said, allows nothing for interest upon bonds or dividends upon stock. The stock of this company is presumably all taken. It has a bonded debt of $800,000, and presumably it must borrow the moneys necessary for the new construction required. Those moneys I am satisfied would amount to between $60,-000 and $70,000. Assuming, for the argument, the smaller amount, the interest upon $60,000 at 5 per cent. amounts to $3,000. This would only be about one-half repaid by the $1,660, the return from the gas furnished at Douglaston. The balance, or about $1,500, would be a burden upon the company, which must be paid out of other income from other customers. It is undoubtedly true that it is not necessary that the first return from an extension should be large, provided there is reasonable ground to foresee that within a reasonable time the return from the investment is going to be large enough to cover the expenses and the interest upon the moneys required to make the same. The promise here is so remote that it does not seem to us reasonable to require this company to make this expenditure for this construction, in view of the fact that the only requirement for gas is for cooking and heating in the summer months, and that the place is already supplied with electricity for illumination.

We are not unmindful of the obligations owing by a public service corporation to serve well the entire community through which it has a franchise; but the statute has defined the extent of its obligation as requiring a reasonable effort so to do. Our attention has been called to the statement of the commissioners at the time that this determination was made as to the representations made by the Consolidated Gas Company before the commission when application was made by that company for permission to buy the stock of the relator. Whatever inference might be drawn from those statements as to the reasons which influenced the commissioners in making the determination hereunder reviewed, we are of the opinion that the facts presented by the record do not present a reasonable justification for the order made.

The determination of the commission must therefore be annulled, without costs, and the application of the petitioners denied. All concur.