THE PEOPLE OF · THE STATE OF NEW YORK ex rel.
NEW YORK AND QUEENS GAS COMPANY, Respondent, *v.*
EDWARD E. McCALL et al., Constituting the Public
Service Commission of the State of New York for the
First District, Appellants.

**Public service commission — Appellate Division has no power
on a writ of certiorari to determine that an order of the public
service commission is unreasonable because unwise and inex-
pedient, but only if it is an unlawful, arbitrary or capricious
exercise of power — when order annulling order of public service
commission reviewable in Court of Appeals.**

1.  The Appellate Division has no power to substitute its own judg-
ment of what is reasonable in place of the determination of the
public service commission, and it can only annul the order of the
commission for the violation of some rule of law.

2.  An order of the commission may·be vacated as unreasonable
if it is contrary to some provision of the Federal or State Constitu-
tion or laws, or if it is beyond the power granted to the commission,
or if it is based on some mistake of law, or if there is no evidence
to support it, or if, having regard to the interests of both the pub-
lic and the carrier, it is so arbitrary as to be beyond the exercise of
a reasonable discretion and judgment.

3.  The Appellate Division does not have the power on a writ of
certiorari to determine that the extension of the gas mains and
pipes of a gas light company ordered by the public service commis-
sion is unreasonable in the sense that it is an unwise or inexpedient
order, but only that it is unreasonable if it is an unlawful, arbi-
trary or capricious exercise of power.   (Code Civ. Pro. § 2140.)

4.  That court having sustained the writ of certiorari and finally
annulled the order of the public service commission without grant-
ing a rehearing, the order is reviewable in this court.

5.  On examination of the facts, *held*, that the proof failed to show
that the order of the public service commission was an arbitrary
and capricious exercise of power, and it appears that the Appellate
Division, without authority, substituted its own judgment for that
of the public service commission in determining that the latter's
order was unreasonable.

*People ex rel. N. Y. & Queens Gas Co.* v. *McCall*, 171 App. Div.
580, reversed.

(Argued May 22, 1916; decided October 3, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 10, 1916, which sustained a writ of certiorari and annulled an order of the defendant public service commission.

Certain residents and property owners of Douglaston and Douglas Manor in the third ward of the borough of Queens, New York city, applied to the public service commission of the first district for an order requiring the relator in this proceeding, the New York and Queens Gas Company, to extend its gas mains and services in such manner as may be necessary reasonably to supply with gas the communities of Douglaston and Douglas Manor. On a review of the proceedings by the Supreme Court at the Appellate Division, the order of the public service commission was annulled. From that determination the commission has appealed to this court.

Douglaston and Douglas Manor are situated in the northeast corner of the borough of Queens near Little Neck Bay. To the southeast of Douglaston and also within the third ward of the borough is Little Neck, which extends to the borough line. To the west are the communities of Bayside and Flushing which are separated from Douglaston by a salt marsh about half a mile or more wide, and extending a mile inland. Through the middle of the marsh runs a creek navigable for small boats and along each side of the marsh is a high hill. The relator is at present supplying gas to Flushing and Bayside, but its mains and pipes are not sufficient to meet the additional requirements of Douglaston and Douglas Manor. The company's gas plant is located in Flushing about six miles from Douglaston, and it will be necessary to lay a main from the plant to Bayside and carry it from there down the hill, over the marsh and up the hill on the other side to reach Douglaston.

Douglaston and Douglas Manor are supplied with electricity for lighting purposes, and gas is desired mainly

for cooking during the summer months. The Appellate Division decided that upon the whole case it was unreasonable to require the relator to extend its services in compliance with the order of the public service commission. Further facts appear in the opinion.

*Arthur Du Bois, George S. Coleman* and *Edward M. Deegan* for appellants. The Appellate Division erred in its interpretation of subdivision 2 of section 66 of the Public Service Commissions Law, under which the order for extension of mains was made. (*State* v. *G. N. R. R. Co.*, 153 N. W. Rep. 247; *People ex rel. Town of Hempstead* v. *Tax Comrs.*, 214 N. Y. 594; *People ex rel. Smith* v. *Hoffman*, 166 N. Y. 462; *Interstate Commerce Com.* v. *Ill. Cent. R. R.*, 215 U. S. 452; *People ex rel. Richmond L. & R. R. Co.* v. *McCall*, 216 N. Y. 716.) The Appellate Division erred in not confining its review to the five matters specified in section 2140 of the Code. (*Beckwith* v. *N. Y. C. R. R. Co.*, 64 Barb. 299; *H. S. Co.* v. *O'Neill*, 10 Misc. Rep. 655; 155 N. Y. 644; *Reich* v. *Cochran*, 114 App. Div. 141; *Von der Born* v. *Schultz*, 104 App. Div. 94; *Kellegher* v. *Forty-second St., etc., Ry. Co.*, 87 App. Div. 630; *People ex rel. R. L. & R. R. Co.* v. *McCall*, 216 N. Y. 716.) The commission's order requiring the relator, respondent, to "extend its gas mains and services in such a manner as may be required reasonably to serve with gas that community known as Douglaston, including Douglas Manor," is reasonable and is supported by the evidence. (*Russell* v. *Sebastian*, 233 U. S. 195; *Consumers Co.* v. *Hatch*, 224 U. S. 148; *Bothwell* v. *Consumers Co.*, 13 Idaho, 568; *O. R. R. & N. Co.* v. *Fairchild*, 224 U. S. 510; *Missouri Pacific Ry. Co.* v. *Kansas*, 216 U. S. 262; *Eaton* v. *Oklahoma Gas & Electric Co.*, Pub. Util. Rep. 1916A, p. 193; *Matter of Pacific Gas & Electric Co.*, Pub. Util. Rep. 1915A, p. 722; *Sisk* v. *Abbington Electric Co.*, Pub. Util. Rep. 1915F, p. 835.)

*John A. Garver* for respondent. The power of the commission is strictly limited to directing "reasonable" extension of the works and distributing system of a gas company; and whether the commission exceeds its regulative power, in directing an extension, is a question of law affecting property rights under the Federal Constitution. (*Ex parte Young*, 209 U. S. 123; *O. R. R. & Nav. Co.* v. *Fairchild*, 224 U. S. 510.) An extension of this kind is not reasonable unless it affords an adequate return upon the investment. (*Smyth* v. *Ames*, 169 U. S. 466; *Wilcox* v. *Consolidated Gas Co.*, 212 U. S. 19; *Oregon R. R. & N. Co.* v. *Fairchild*, 224 U. S. 510.)

CUDDEBACK, J. The public service commissions are authorized by law "to order reasonable improvements and extensions of the works, wires, poles, lines, conduits, ducts and other reasonable devices, apparatus and property of gas corporations, electrical corporations and municipalities." (Pub. Serv. Comm. Law [Cons. Laws, ch. 48], § 66.)

Under the authority of this statute the public service commission for the first district made the order requiring the relator to extend its gas mains and services to meet the reasonable requirements of Douglaston and Douglas Manor.

In applying the provisions of this statute the court at the Appellate Division said: "We have no doubt that under this law the question remains for the court to determine upon the review of the determination of the Public Service Commission whether the extension ordered was a reasonable extension."

This statement of the law is quite likely to create a misapprehension as to the power of the court. The court has no power to substitute its own judgment of what is reasonable in place of the determination of the public service commission, and it can only annul the order of the commission for the violation of some rule of law.

The public service commissions were created by the legislature to perform very important functions in the community, namely, to regulate the great public service corporations of the state in the conduct of their business and compel those corporations adequately to discharge their duties to the public and not to exact therefor excessive charges. It was assumed perhaps by the legislature that the members of the public service commissions would acquire special knowledge of the matters intrusted to them by experience and study, and that when the plan of their creation was fully developed they would prove efficient instrumentalities for dealing with the complex problems presented by the activities of these great corporations. It was not intended that the courts should interfere with the commissions or review their determinations further than is necessary to keep them within the law and protect the constitutional rights of the corporations over which they were given control.

The law governing the commissions is well expressed by the Minnesota Supreme Court in *State* v. *Great Northern Ry. Co.* (153 N. W. Rep. 247). It is there said: "The order may be vacated as unreasonable if it is contrary to some provision of the federal or state constitution or laws, or if it is beyond the power granted to the commission, or if it is based on some mistake of law, or if there is no evidence to support it, or if, having regard to the interests of both the public and the carrier, it is so arbitrary as to be beyond the exercise of a reasonable discretion and judgment." (See, also, *People ex rel. Town of Hempstead* v. *State Board of Tax Comrs.*, 214 N. Y. 594; *People ex rel. Morrissey* v. *Waldo*, 212 N. Y. 174.)

In *Interstate Commerce Comm.* v. *Illinois Central R. R. Co.* (215 U. S. 452, 470) the chief judge, after stating the power of the court, continued: "It is equally plain that such perennial powers lend no support whatever to the proposition that we may, under the guise of exerting judicial power, usurp merely administrative functions

by setting aside a lawful administrative order upon our conception as to whether the administrative power has been wisely exercised. Power to make the order and not the mere expediency or wisdom of having made it, is the question."

The court at the Appellate Division did not, therefore, have the power to determine that the extension of the relator's gas mains and pipes ordered by the public service commission was unreasonable in the sense that it was an unwise or inexpedient order, but only that it was unreasonable if it was an unlawful, arbitrary or capricious exercise of power.

The relator argues in support of the power of the Appellate Division to review generally the reasonableness of the order of the public service commission that the necessary authority is given by the provision with regard to the writ of certiorari contained in section 2140 of the Code of Civil Procedure. That section reads as follows:

"§ 2140. The questions, involving the merits, to be determined by the court upon the hearing, are the following only:

"1. Whether the body or officer had jurisdiction of the subject-matter of the determination under review.

"2. Whether the authority, conferred upon the body or officer, in relation to that subject-matter, has been pursued in the mode required by law, in order to authorize it or him to make the determination.

"3. Whether, in making the determination, any rule of law, affecting the rights of the parties thereto, has been violated, to the prejudice of the relator.

"4. Whether there was any competent proof of all the facts, necessary to be proved, in order to authorize the making of the determination.

"5. If there was such proof, whether there was, upon all the evidence, such a preponderance of proof, against the existence of any of those facts, that the verdict of a jury, affirming the existence thereof, rendered in an

action in the Supreme Court, triable by a jury, would be set aside by the court, as against the weight of evidence."

I do not understand that this section of the Code extends the power of the court beyond the rules laid down in *State* v. *Great Northern Ry. Co.* and *Interstate Com. Comm.* v. *Illinois Central R. R. Co.* (*supra*).

It is urged that under the provisions of subdivision 5 of section 2140 the court may set aside the determination of the commission as against the weight of evidence, regarding it the same as the verdict of a jury.

The court had occasion to say in *People ex rel. Smith* v. *Hoffman* (166 N. Y. 462, 476) in construing section 2140 of the Code of Civil Procedure, as applied to the determination of the board of examination under the Military Code: "The review authorized does not substitute the judgment of the civil court for that of the military court upon the evidence or the merits, but inquires into jurisdiction of the subject-matter, the exercise of authority in relation to the subject-matter according to law, the violation of any rule of law to the prejudice of the relator and the like."

Of course, if the court at the Appellate Division had annulled the order of the public service commission and granted a rehearing in the exercise of discretion, its order would not be reviewable in this court (*Barrett* v. *Third Ave. R. R. Co.*, 45 N. Y. 628), but that is not the case. The court sustained the writ of certiorari and finally annulled the order of the public service commission without granting a rehearing.

The question now is whether or not there was any evidence to show that the order of the public service commission was an unlawful and arbitrary exercise of power. (*Acme Realty Co.* v. *Schinasi*, 215 N. Y. 495; *People ex rel. Manhattan Ry. Co.* v. *Barker*, 165 N. Y. 305; *Otten* v. *Manhattan Ry. Co.*, 150 N. Y. 395.)

There was no dispute as to the basic facts of the case. There was some variation in the estimates of the wit-

People ex rel. N. Y. & Queens Gas Co. *v.* McCall.  **91**

1916.]  Opinion, per Cuddeback, J.  [219 N. Y.]

nesses as to the cost of iron pipe and the expense of engineering supervision and like matters, but there was no real disagreement as to the cost of the extension of the relator's system of gas distribution, and the increase in revenue that the relator would probably receive therefrom.

The court at the Appellate Division in its opinion summed up the proof on the subject. The court said that the cost of the extension would be between $60,000 and $70,000, and that the increased return to the relator from the consumption of gas would be about $1,660 per year, which is only one-half of the interest at five per cent upon the extension.

This is very far from showing that the order of the public service commission was simply an arbitrary and capricious exercise of power. Indeed it was not asserted to be so by the court. The court in annulling the order claimed and exercised the right to review the action of the public service commission and pass generally upon its wisdom and expediency.

In Douglaston and the neighboring territory in the third ward of the borough of Queens covered by the relator's franchise, there are some 332 houses. The occupants of these houses can get no gas unless they are supplied by the relator. It is the duty of the relator to supply their needs if practicable. (*Wisconsin, M. & P. R. R.* v. *Jacobson,* 179 U. S. 287; *People ex rel. Woodhaven Gas Light Co.* v. *Deehan,* 153 N. Y. 528.) The cost of the extension is not the only matter for consideration. (*Oregon R. R. & N. Co.* v. *Fairchild,* 224 U. S. 510, 529.)

The court at the Appellate Division substituted its own judgment for that of the public service commission in determining that the latter's order was unreasonable. This decision if allowed to stand will seriously hamper the commissions in the discharge of their duties, and go far toward defeating the efforts of the legislature to establish agencies to regulate the great public service corporations.

The order should, therefore, be reversed and the order of the public service commission reinstated, with costs in the Appellate Division and in this court.

WILLARD BARTLETT, Ch. J., CHASE, HOGAN, CARDOZO and POUND, JJ., concur; HISCOCK, J., not voting.

Order reversed, etc.