In the Matter of the Application of the Diamond State Telephone Company for Changes in Rates in Accordance with Section 151 of Title 26 of the *Delaware Code of* 1953.

*(April* 20, 1955.)

WOLCOTT and BRAMHALL, Justices, and CAREY, Judge, sitting.

*Max Terry, James J. Walsh* and *Richard W. Case* (of Baltimore) for Appellant.

*William S. Potter* and *Richard F. Carroon* (of Berl, Potter and Anderson) and *John B. King* and *Paul Maloney* (of Philadelphia) for Appellee.

Supreme Court of the State of Delaware, No. 9, 1954.

BRAMHALL, J.:

In this case, subsequent to a prior opinion of this court the Diamond State Telephone Company (hereafter "Company") filed a motion for reargument. After consideration this motion was granted. The facts are fully set forth in the former opinion of this court herein referred to.

In its petition for reargument the Company alleged: (1) That the Superior Court had the power to determine whether or not the Public Service Commission (hereafter "Commission") gave proper weight to evidence of value, and, if not, that that court had the authority to revise the order of the Commission by making its own findings; (2) That the Superior Court's judgment in this case should not be reversed except for errors of law; and, (3) That the Superior Court did not err in its determination of "fair value" of the Company's property by giving predominant weight to reproduction cost depreciated and that the evidence submitted warranted the Superior Court in making the finding which it did relative to "fair value".

The questions raised by this motion present the following questions: (1) Did the Commission err in fixing the rate base; and, (2) Did the Superior Court have the right to examine the record before the Commission and, upon the finding of error, substitute its own findings in lieu of those of the Commission?

## 1. *Did the Commission err in fixing the rate base?*

At the hearing before the Commission the evidence submitted on behalf of the Company related entirely to reproduction cost less depreciation, amounting to approximately $28,400,000. The evidence submitted on behalf of the Commission related entirely to original cost depreciated, amounting to aproximately $19,800,000. The factual evidence offered in support of these two theories was not contradicted. Without stating the manner in which it made its determination, the Commission fixed the value of the Company's property at $22,000,000. The Commission fixed the rate of return to the Company at $6\frac{1}{4}\%$. The Company has taken no exception to such finding. It is therefore not in dispute.

In fixing rates the Commission chose to do so by determining the fair value of the property of the Company. Since the Commission chose to follow this method, we do not here reach the question as to whether or not the Commission was compelled to follow this method in making its findings. It is provided by statute that it may do so and it did.

In this state the Legislature has set out a procedure for the establishment of the fair value of the property of a public utility. Title 26, Sec. 126, *Del. C.* 1953, provides as follows:

"The Commission may, from time to time, ascertain and determine the fair value of the property of any public utility whenever, in the judgment of the Commission, it is necessary so to do for the purpose of carrying out any of the provisions of this chapter, and in making such valuation the Commission may have access to and use any books, documents, or records in the possession of any department or board of this State or any poli-

tical subdivision thereof. In ascertaining and determining such fair value, the Commission may determine every fact, matter, or thing which, in its judgment, does or may have any bearing on such value; and may take into consideration, among other things, the original cost of construction, particularly with reference to the amount expended in the existing and useful permanent improvements; with such consideration for the amount in market value of its bonds and stocks, the probable earning capacity of the property under particular rates prescribed by statute or ordinance, or other municipal contract, or fixed or proposed by the Commission, and for the items of expenditures for obsolete equipment and construction, as the circumstances and the historical development of the enterprise may warrant; the reproduction costs of the property, based upon the fair average price of materials, property and labor, and the development and going concern value of such public service company; and these, and any other elements of value, shall be given such weight by the Commission as may be just and right in each case."

It is conceded that under this statute Delaware is what is known as a "fair value" state. The origin and development of this theory of determining values is set forth in the original opinion of this court. We see no reason for repeating it here.

In determining what is "fair value" several questions must be considered: first, the time as of which fair value shall be determined; secondly, the weight to be given to any and all of the different elements which the statute provides shall be considered in determining fair value; and, lastly, whether or not the rates fixed by the Commission will produce a fair and just return upon the reasonable value of the property used, or required to be used, in the service furnished to the public within this state.

As to the time for determining fair value, this court held in its previous opinion [107 *A.* 2d 790] that "fair value" meant " 'present' fair value." This determination is not disputed

on behalf of either the Commission or the Company. We find no fault with this conclusion now.

The question as to the weight to be given to the different elements enumerated in the statute in determining fair value has always been a problem of great difficulty to the courts. Some courts have given predominant weight to original cost; others to reproduction cost depreciated; and, still others to original cost and reproduction cost depreciated jointly. We feel free in this case to make our own interpretation of the meaning of "fair value" based upon the language of the statute and in the light of its historical background.

Among the items set up in Sec. 126 of the statute are original cost depreciated and reproduction cost depreciated. However, it is also set forth therein that all these different elements shall be considered along with all other pertinent elements of value and that they shall be given such weight as shall be "just and right in each case."

The difficulty with which a court is faced in determining fair value under a fair value statute, as in this state, is that while the statute sets forth the elements to be considered, except for the nebulous phrase "just and right in each case", there is nothing said specifically therein about the weight to be given to any or all of these different elements. Interpreting the pertinent sections of the statute as a whole, the intention of the Legislature in adopting the dictum of *Smyth v. Ames*, 169 *U. S.* 466, 18 *S. Ct.* 418, 42 *L. Ed.* 819, as set forth in the previous opinion in this case, becomes more understandable. Sec. 183(b) provides that the findings of the Commission "shall be in sufficient detail to enable the court on appeal to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence." In Sec. 127 it is said that the Commission shall "fix just and reasonable individual rates, joint rates, charges or schedules thereof". It is provided in Sec. 126 "and these, and any other elements of value, shall be given such weight by the Commission as may be just and right

in each case." Considering the language quoted from each of these sections in the light of the relationship of these sections to each other, we interpret these sections to mean that the Commission in giving proper weight to the evidence presented and in giving such consideration to the criteria of fair value as are "just and right" shall accord to each element of value such weight as may be necessary and proper under the facts presented in each particular case.

Did the Commission in reaching its determination give proper weight to original cost depreciated and reproduction cost depreciated? As previously stated, the Commission gave no reason for its findings, although the statute provides that it shall do so. The finding of the Commission as to the fair value of the Company's property in the sum of $22,000,000 is approximately 12% above original cost depreciated, or aproximately 25% under reproduction cost depreciated. Since there was no factual dispute in the testimony before the Commission, the question here is not one relating to the correctness or incorrectness of the testimony, or any part thereof, but rather one for the determination by the Commission as to the weight to be given to each of these elements or standards of value.

The findings of the Commission must reflect its reasonable judgment in accordance with the statute and all relevant facts. See *New Jersey Power & Light Co. v. State*, 9 *N. J.* 498, 89 *A.* 2d 26, 31, 32. Sec. 183(b) provides that the "findings shall be in sufficient detail to enable the court on appeal to determine the controverted question presented by the proceeding and whether proper weight was given to the evidence." Under the language of this statute, the question presented is not whether there was substantial evidence to support the finding of the Commission; it is rather one of whether or not the finding of the Commission was against the weight of the evidence. If the clear weight of the evidence is against the finding of the Commission, it will be set aside. *Manlowe Transfer & Distributing Co., Inc., v. Department of Public Service of Washington*, 18 *Wash.* 2d 754, 140 *P.* 2d 287, 155 *A. L. R.* 928; *Public Service Co-*

*ordinated Transport v. State,* 5 *N. J.* 196, 74 *A.* 2d 580; *East Ohio Gas Co. v. Public Utilities Commission of Ohio,* 133 *Ohio St.* 212, 12 *N. E.* 2d 765; *State ex rel. Dail v. Public Service Commission,* 240 *Mo. App.* 250, 203 *S. W.* 2d 491.

We are living in an inflationary period. Since 1940 the increase in the cost of wages and material which the Company has had to pay has been much greater than the increase in rates for telephone service. During that period the evidence discloses that the Consumers Price Index has increased 89%; the Company's wage has doubled; federal income taxes have increased 117%; building construction more than 100%; railway freight rates 79%; bare copper wire 107%; creosoted pine poles 123% and 148%; clay conduit 88% and 91%; private branch exchange switch equipment 50% to 100% for different sizes. To reflect this increased cost during this period the Company has been permitted to raise its telephone rates only 18%. As a result, the earnings deteriorated progressively until in 1952 it was necessary for it to reduce its surplus account by $33,000 in order to pay its usual dividend. There is no evidence to indicate that these present conditions are merely temporary and will not remain more or less static for a considerable period of time. Certainly they have existed long enough to place the burden of proving the contrary on the Commission.

The purpose of the statute is the supervision and regulation of public utilities within this state. For the protection of the public, due to the fact that the Company is a monopoly and is not subject to competition with other companies, it is the duty of the Commission to see that the public utility shall keep the price of its commodity or service within reasonable bounds. On the other hand, the Commission must see that the utilities shall receive a reasonable return based upon the present fair value of the company's property and sufficient to pay, in addition to the cost of production, a reasonable return to its stockholders and some surplus for necessary expansion. *Consolidated Gas Co. of New York v. Newton, D. C.,* 267 *F.* 231; *City of Chicago v. Illinois Commerce Commission,* 4 *Ill.* 2d 554, 123 *N.*

*E.* 2d 500. The Company has no constitutional right to profits such as are realized or anticipated in highly profitable or speculative enterprises. *Los Angeles Gas & Electric Corporation v. Railroad Commission,* 289 *U. S.* 287, 53 *S. Ct.* 637, 77 *L. Ed.* 1180.

Considering the fact that such a large proportion of the Company's property was purchased prior to 1946, and considering also the very great increase in the cost of operation, with a very small increase in rates during the same period, it is clear that the amount allowed by the Commission in excess of original cost depreciated does not properly reflect the impact of inflationary prices upon the value of the Company's property or upon the cost of operation or replacement. Under such conditions the amount of approximately $22,000,000 fixed by the Commission as the fair value of the Company's property is inadequate to give the Company a reasonable return upon the present fair value of its properties.

It therefore follows that the finding of the Commission in this respect is not "just and right" and that proper weight was not given to evidence of reproduction cost depreciated. The finding of the Commission in this respect must be reversed.

2. *Did the Superior Court have the right to examine the record before the Commission and, upon the finding of error, substitute its own findings in lieu of those of the Commission?*

The Commission asserts that the Superior Court in fixing the Company's rate base at $25,600,000 improperly assumed the prerogatives and functions of the Commission, constituting reversible error. The Commission contends there were three possible courses which the Supreme Court might have taken once it decided to reverse the Superior Court: (1) to reverse the action of the Superior Court and affirm the action of the Commission; (2) to reverse the action of the Superior Court and remand the case to that tribunal with directions to remand the cause to the Commission for rehearing on the rate base question; or, (3) to reverse the action of the Superior Court and remand the

case to that tribunal in order that it might make further rate base determinations.

The Company argues that the Superior Court had complete and absolute power on appeal if it should determine that the findings of the Commission, including those of fair value, were not "just and right", to make its own determinations of fair value on the record before it for the guidance of the Commission where the interest of justice will be served by such action. Of course, it is contended that the action of the Superior Court was in the interest of justice.

The fixing of rates which a public utility will be permitted to charge is generally considered to be a legislative act. *St. Joseph Stock Yards Co. v. United States*, 298 *U. S.* 38, 56 *S. Ct.* 720, 80 *L. Ed.* 1033; *City of Philadelphia v. Pennsylvania Public Utility Commission*, 174 *Pa. Super.* 641, 102 *A.* 2d 428; *Water Works and Sanitary Sewer Board of Montgomery v. Sullivan*, 260 *Ala.* 214, 69 *So.* 2d 709; *State ex rel. Utilities Commission v. State*, 239 *N. C.* 333, 80 *S. E.* 2d 133; *Southwestern Associated Tel. Co. v. City of Dalhart, Tex. Civ. App.*, 1952, 254 *S. W.* 2d 819; *Duquesne Light Co. v. Pennsylvania Public Utility Commission*, 176 *Pa. Super.* 568, 107 *A.* 2d 745.

The Commission is much better able to perform this function for several reasons. Presumably, a public service commission would generally be much more experienced in the fixing of rates, since it would have a great deal of specific information at its "finger tips" which would not be available to a judicial body. The Commission also has the opportunity of calling and hearing the testimony of expert witnesses and, to some extent at least, would have the advantage of seeing and hearing these witnesses and making its own observations as to the importance and reliability of their testimony.

In the absence of constitutional or legislative authority, the power of the court on appeal from an order of the Public Service Commission is merely to affirm or reverse the order made by the Commission. Under such circumstances, the

court is without authority to amend, modify, substitute or direct the substitution of another order or in any way to make an original order in the premises. *Northwestern Wisconsin Electric Co. v. Public Service Commission,* 248 *Wis.* 479, 22 *N. W.* 2d 472, 23 *N. W.* 2d 459. In this state, in the case of *Wilmington City Ry. Co. v. Taylor, D. C.* 1912, 198 *F.* 159, 192, the United States District Court, Bradford, J., came to the same conclusion. In that case, the Act of March 29, 1911, 26 *Del. Laws,* Ch. 206, creating the Wilmington Public Utility Board, with power to supervise and regulate street railway and other public utility corporations in the City of Wilmington, with power to supervise rates, etc., provided for an appeal from any order of that Board to the Superior Court, which was given jurisdiction to hear and determine the appeal " 'on the merits of the matters forming the basis of the order' ". In holding that the utility board, and not the court, was the body having the last legislative word in a determination of a reasonableness of rates, the court said:

"Admittedly the superior court has no legislative function to perform on an appeal. Its duty is purely judicial. It is without authority to amend or correct the order of the utility board or substitute another order for it. Its duty is merely that of affirmation or reversal."

Since rate fixing is normally an act legislative in character, the courts have usually limited the review on appeal to the question of whether or not the Public Utilities Commission should be affirmed or reversed.

In the case of *People ex rel. New York & Queens Gas Co. v. McCall,* 219 *N. Y.* 84, 113 *N. E.* 795, 796, the appellate court in applying the provisions of the Public Utilities Statute, quoted the Supreme Court at the Appellate Division, 171 *App. Div.* 580, 157 *N. Y. S.* 707, as follows:

" 'We have no doubt that under this law the question remains for the court to determine upon the review of the determination of the Public Service Commission whether the extension ordered was a reasonable extension.' "

With reference to this statement, the appellate court said:

"This statement of the law is quite likely to create a misapprehension as to the power of the court. The court has no power to substitute its own judgment of what is reasonable in place of the determination of the Public Service Commission, and it can only annul the order of the Commission for the violation of some rule of law.

"The Public Service Commissions were created by the Legislature to perform very important functions in the community, namely, to regulate the great public service corporations of the state in the conduct of their business, and compel those corporations adequately to discharge their duties to the public and not to exact therefor excessive charges. It was assumed perhaps, by the Legislature that the members of the Public Service Commissions would acquire special knowledge of the matters intrusted to them by experience and study, and that when the plan of their creation was fully developed they would prove efficient instrumentalities for dealing with the complex problems presented by the activities of these great corporations. It was not intended that the courts should interfere with the Commissions or review their determinations further than is necessary to keep them within the law and protect the constitutional rights of the corporations over which they were given control."

In the case of *Newton v. Consolidated Gas Co. of New York*, 258 *U. S.* 165, 42 *S. Ct.* 264, 267, 66 *L. Ed.* 538, Justice McReynolds said:

"Rate making is no function of the courts and should not be attempted either directly or indirectly."

In the case of *Petition of Public Service Coordinated Transport*, 5 *N. J.* 196, 74 *A.* 2d 580, 590, Chief Justice Vanderbilt, in commenting upon the presumptions given to a finding of the Public Service Commission, said:

"This is subject, however, to the qualification that in legislative action the courts will not merely substitute their judgment for that of a legislative body."

In *St. Joseph Stock Yards Co. v. United States, supra* [298 *U. S.* 38, 56 S. Ct. 725], Chief Justice Hughes said:

"The court does not sit as a board of revision to substitute its judgment for that of the Legislature or its agents as to matters within the province of either."

The Company relies on the wording of the statute to support its contention that the Superior Court, upon reversing the finding of the Commission as to fair value, had the authority to make its own findings in that respect. Sec. 192 (b) of Title 26, provides as follows:

"Upon every appeal the cause shall be determined by the Court from the record (which shall include a typewritten copy of the evidence and of the findings and order and opinion, if any, of the Commission) without a jury, and the court may affirm, modify or revise the order of the Commission, in whole or in part, or may remand the cause to the Commission for rehearing, in whole or in part. The Superior Court is vested with jurisdiction and power to hear and determine all such appeals, and with power to make any and all rules needful or convenient in the premises. Upon the determination of every appeal, a copy of the opinion and order of the Court shall be certified to the Commission."

The Company, adverting to the opinion of the Superior Court [103 *A.* 2d 331], relies upon the words "to revise or modify." In this respect, the Superior Court in its opinion stated: "Both of these last mentioned words connote the right to change, to alter, to amend or to reduce." The Company apparently does not dispute the contention of the Commission, or the finding of this Court, that rate fixing is largely a legislative function.

We cannot agree with the interpretation of the Superior Court or with the contention of the Company as to the meaning of the words "revise" or "modify" as set forth in the statute. The Superior Court has correctly stated the meaning of the words "revise" or "modify", as set forth in dictionaries, namely,

as meaning "change, to alter, to amend or to reduce." But we do not interpret the latter words, or the words "revise" or "modify", as giving to the Superior Court authority, under the facts of this case, to substitute its findings for those of the Commission. Nor have they been so interpreted in the decisions of other states having statutes similar to the statute in this state.

The case of *Denver & S. L. R. Co. v. Chicago, B. & Q. R. Co.*, 64 *Colo.* 229, 171 *P.* 74, 86, was a case involving the division or apportionment between carriers of through rates. Section 52 of the Public Utilities Act of the State of Colorado provided:

"Upon hearing, the supreme court shall enter judgment either affirming, setting aside, or modifying the order or decision of the commission." *Laws* 1913, p. 497.

In that case it was contended that the language above quoted was sufficient authority for the court to modify the order of the Commission by fixing the division of certain amounts. In denying its authority to act, the court said:

"We are not only not authorized to fix a division, but feel it our duty and have attempted to discuss the points under consideration in a manner that will not disclose our personal views upon the weight to be given any competent testimony or the result that should follow, and thereby embarrass the commission in its determination of these questions, when considered under correct principles of law."

In the case of *City of Ardmore v. Excise Board of Carter County*, 155 *Okl.* 126, 8 *P.* 2d 2, 7, Section 9698 of the Statutes of that state provided that the excise board " 'shall have power and authority to revise and correct any estimate certified to them.' " * * * In holding that it was without authority to make its own findings, the Superior Court of Oklahoma said:

"The correction of an estimate cannot be said to be the assessment of a tax within the meaning of section 20, article 10 of the Constitution. It is nothing more than the word implies; 'a correction.' Webster's International Dictionary defines the

word 'revise' as follows: 'To look at again for the detection of errors; to re-examine; to review, to look over with care for correction, as, to revise a writing; to revise a translation.' If the Legislature had that meaning in mind when it used the word 'revise,' revision thereunder would not be the assessing of a tax within the meaning of section 20, article 10, *supra*."

In the case of *Ott v. Board of Registration in Medicine,* 276 *Mass.* 566, 177 *N. E.* 542, 544, the court said:

"The scope of the jurisdiction of the court on the petition is restricted to 'revising or reversing' that which was done by the board. * * * To revise in this connection means in substance the same as to review."

In the petition for reargument and in the reargument itself, the Company objected strenuously to the statement in the former opinion of this Court that because of their similarity the statute relative to appeals from the Public Service Commission to the Superior Court is controlled by the decisions relating to the statute governing appeals from the Industrial Accident Board to the Superior Court. See *Wright v. American Brake Shoe Co.,* 8 *Terry* 299, 90 *A.* 2d 681. In discussing these two statutes, Justice Tunnell, calling attention to the similarity in the language of the two statutes, said (107 *A.* 2d 793):

"The disinclination of the Superior Court to be drawn into a retrial of the merits of workmen's compensation cases is, of course, well established. (Citation.) In our judgment, therefore, the rule which has been applied in workmen's compensation cases is the rule which governs the present case."

This criticism is based largely upon the ground that the function of the two Commissions is, in some respects, entirely different. The Industrial Accident Board performs many functions of a judicial body; whereas, the Public Service Commission is primarily a legislative body, produces witnesses on its own behalf and acts as a party to the proceedings.

In the case of the Public Service Commission Act the authority to the court on appeal is to "affirm, modify or revise the the order of the Commission, in whole or in part, or (it) may remand the cause to the Commission for rehearing, in whole or in part." The authority of the Superior Court on appeal from the Workmen's Compensation is based upon the following language: "* * * and the Court may reverse, affirm, or modify the award of the Board, or remand the cause to the Board for a rehearing." 19 *Del. C.* § 2350(b).

It will be seen that the language of the two statutes is unquestionably very similar. Forgetting for the moment any difference in the functioning of the two Commissions, the interpretation which the court would place upon this language would be the same. But the Company says that because of the difference in the functions of the two Commissions a different interpretation must be placed upon the authority of the court in the case of an appeal from the Public Service Commission.

It is true that the Commission is a legislative body, at times institutes proceedings of its own motion and acts as a party on appeal. But what is there in this Act which requires a different rule in appeals from the Public Service Commission from that applied in appeals from the Industrial Accident Board? We can see no magic in the use of the word "revise". In our opinion, the words "affirm, modify or revise" have no greater meaning than the words "reverse, affirm, or modify". Even if we assume the meaning of "revise" to be broader than "modify",—an assumption with which we do not agree,—certainly no meaning can be read into any construction thereof which would give to the Superior Court authority, in reversing the findings of the Commission, to substitute its own findings in lieu of those of the Commission. In spite of any difference there may be between the work of the two Commissions, we feel that the interpretation placed upon the language of the Workmen's Compensation Act should be followed in the interpretation to be placed upon the similar language found in the Public Service Commission Act. If the Legislature had intended the language of this section to

have a different interpretation from that given the similar language in the Workmen's Compensation Act it could easily have said so. We must assume by its silence that it did not so intend.

The Company says that in holding that the Superior Court was wrong in making its own independent valuation of the Company's plant and its own determination of the amount of working capital required, the Supreme Court was flying in the face of Title 26, Sec. 183(b) of the *Delaware Code of* 1953 to the effect that on appeal the court may determine "whether proper weight was given to the evidence" and Sec. 192(b), providing that the court "may affirm, modify or revise the order of the Commission, in whole or in part, or may remand the cause to the Commission for rehearing, in whole or in part."

We have already discussed the effect of Sec. 192(b) upon the authority of the Supreme Court on appeal. We shall not labor it here.

It is true that Sec. 183(b) provides that the court on appeal may determine if proper weight was given to the evidence. But there is nothing said or implied in this particular section which would give the Superior Court, after it has determined that sufficient weight was not given to the evidence, the power to go on and make its own determination. There is nothing in this section which changes the general law to the effect that a public service commission is a legislative body or that the Superior Court, on appeal, is not a super legislative body, with power to make its own findings.

We do not say that the Superior Court in remanding a case to the Commission after reversal may never give the Commission specific binding instructions regardless of the facts and circumstances. We conceive of instances in which such instructions may not only be necessary but proper. For illustration, in a case where the Commission is limited to making one of two decisions, the Superior Court on appeal may say that the decision which the Commission made was wrong, which would, of course, make the other decision right. There may also, at times,

be occasion for other unusual instructions by the Superior Court, on appeal. But such a situation does not exist here. In this case, the Commission, after hearing the evidence, made an independent finding and the Superior Court on appeal made its own independent finding from the evidence presented before the Commission,—in which these findings were not the only findings which could have been made. Such a finding by the Superior Court under such circumstances is not supported by the authorities or by the statutes relied upon by the Company.

We next consider the claim of the Company to working capital. The facts relative thereto are fully set forth in the former opinion of this court. We shall not elaborate upon them here. Based upon the testimony of the witness called by the Commission relative to the experience of another company in an adjoining state, the Commission determined that the Company was not entitled to any working capital. Upon appeal, the Superior Court set aside the finding of the Commission in this respect, on the ground that there was no competent evidence to refute the Company's evidence that it does require working capital, and allowed the sum of $100,000 for working capital.

We agree with the Superior Court's conclusion that the evidence offered by the Commission in this respect was not competent evidence, but we do not agree that the Superior Court had the authority to fix the amount to be allowed for working capital. For the same reasons herein given relative to the right of the Superior Court to fix the rate base, we think that the Commission will have to determine the amount to be allowed for working capital. The finding of the Superior Court in this respect must therefore be reversed and the matter remanded to the Commission with instructions to make its own finding as to working capital in the light of the testimony before it, not including the evidence which has been held to be incompetent.

For the reasons given herein, we must reverse the finding of the Commission as not giving sufficient weight and consideration to reproduction cost depreciated in the light of the evi-

dence and of present inflationary conditions. But neither can we approve the action of the Superior Court in substituting its own findings in lieu of those of the Commission. The case must be returned to the Superior Court with instructions, in turn, to return it to the Commission for the purpose of re-considering its decision in the light of this opinion. We have said that sufficient consideration was not given to reproduction costs depreciated, in the light of the evidence and general inflationary conditions. That does not mean, necessarily, that the Commission shall disregard every other consideration and give weight only to reproduction costs; it means, merely, that sufficient weight was not given formerly to reproduction costs depreciated and that the Commission must re-consider its finding in this respect, giving due consideration to the evidence submitted, general inflationary conditions, and in the light of this opinion—in order to fix a valuation which will be "just and right".

Justice WOLCOTT concurs with this opinion with respect to the first question, namely, whether the Public Service Commission erred in fixing the rate base at $22,000,000. Judge CAREY dissents as to this question. Judge CAREY, however, concurs with the second question discussed in this opinion, to the effect that the Superior Court was not authorized, upon reversal of the Public Service Commission to proceed to fix its own valuation of the Company's property. Justice WOLCOTT dissents with the opinion on this question.

WOLCOTT, Justice (concurring in part and dissenting in part).

The petition for re-argument filed by the Company raises two questions for our consideration, *viz.*, (1) Did the Public Service Commission comply with the provisions of 26 *Del. C.* Ch. 1, when it fixed a rate base for the company of $22,000,000, and (2) Does the Superior Court have the authority under 26 *Del. C.* Ch. 1, on appeal from the Public Service Commission, if it finds that the Commission has committed error, to make its

own findings and enter an order directing the Commission to give effect to those findings?

I concur in the opinion of Justice BRAMHALL upon the first question holding that the Public Service Commission committed error in fixing the Company's rate base at $22,000,000, but in view of the importance of the question I feel justified in setting forth the following additional reasons which in my view also support his conclusion. 26 *Del. C.* § 155, requires the Public Service Commission to fix "just and reasonable" rates to be charged by any public utility. It is required to establish rates which will yield a fair return to the utility upon the present fair value of its property dedicated to public use. All are agreed that this is the requirement of the statute. All are also agreed that a rate of return of $6\frac{1}{4}\%$ upon the present fair value of the utility's property is just and reasonable. The only point in dispute, therefore, is the figure representing the present fair value of the utility's property dedicated to the public use.

26 *Del. C.* § 126, sets forth a number of factors which the Commission may take into consideration in fixing the fair value of a utility's property dedicated to public use. Among these elements are original cost, reproduction cost, and "the probable earning capacity of the property under particular rates". There are other factors included in this code section but they are obviously inappropriate to enter into the fixing of value of this Company's property in the state of this particular record.

The entire statute is designed to supply by regulation the missing element of competition, which in the case of competitive businesses protects the public from excessive and exorbitant charges. At the same time, the statute is designed to insure through regulation that the utility will receive a fair return upon the current value of its property devoted to public use. This means that the rates to be established must be such as to permit the utility to earn sufficient income to enable it to pay its operating expenses, to add sufficient money to its surplus to attract new capital for expansion purposes, and to pay a fair return to

its stockholders. *United Ry. & Electric Co. of Baltimore v. West,* 280 *U. S.* 234, 50 *S. Ct.* 123, 74 *L. Ed.* 390; *Federal Power Commission v. Hope Natural Gas Co.,* 320 *U. S.* 591, 64 *S. Ct.* 281, 88 *L. Ed.* 333. Rates therefore, must be fixed upon the basis of a value which will insure a profit sufficient to induce the investment of private capital in the business. *Consolidated Gas Co. of New York v. Newton, D. C.,* 260 *F.* 231.

It is obvious that there is no hard and fast mathematical formula to be applied in all cases which will establish a just and reasonable schedule of rates. The problem is largely one of sound judgment to be exercised in the light of current conditions. One approach to the problem is to undertake to estimate the present fair value of the utility's property and to apply a determined rate of return to it in order to compute the amount of income the utility will be permitted to earn. However, this is only a proper beginning to a solution. It cannot be the sole criterion for the reason that reliance upon this approach alone would ignore as a practical matter the earnings the utility must have in order to operate at a fair profit. It is for this reason that Sec. 126 authorizes the Commission to take prospective earnings into account in determining the fair value of the utility's property.

In the opinion in this cause of the former majority of this Court, inclusion in Sec. 126 of authority to take prospective earnings into consideration was spoken of as circuity of reasoning, since the fair value of the utility's property could be fixed by considering the rates allowed, and at the same time the rates would be fixed upon the basis of the fair value of the property. However, this is not necessarily the fact. I think Sec. 126 requires the rate-fixing body to determine the present fair value of a utility's property, and then to test that finding by a determination of the utility's prospective earnings from the rates established by that value. If the earnings allowed the utility by an application of the rate of return to the proposed valuation does not permit the utility to pay its operating expenses, add to surplus and pay a reasonable return to its stockholders, then an error has been made in establishing the fair value of the utility's

property. By the application of the test of prospective earnings, it is possible to judge whether or not a proper fair value has been determined. If the rate of return applied to the valuation figure yields insufficient earnings, then the valuation figure is too low.

In this cause, the record demonstrates that the Company to pay its ordinary operating expenses must earn net above taxes approximately $1,700,000. This amount of earnings is required to permit the Company to continue to pay its ordinary dividend, which is not attacked as excessive, to attract additional capital for a necessary $10,000,000 expansion of its plant, to make provision for depreciation of its plant in the light of current inflationary costs, which it is not permitted to do by the ordinary depreciation charge permitted it by the Commission's regulations, and to add a modest sum to surplus.

The fair value fixed by the Commission of $22,000,000 would allow the Company to earn on the basis of the fixed rate of return net income of approximately $1,375,000 per year. Thus is demonstrated that the fair value placed by the Commission upon the Company's property is too low.

For the foregoing reasons, and for the reasons set forth in his opinion, I concur in the result reached by Justice BRAM-HALL that the Commission erred in determining the fair value of the Company's property to be $22,000,000 because that amount is inadequate to give the Company a reasonable return upon the present fair value of its property. I, therefore, join in the decision to remand the cause to the Commission with instructions to reconsider the matter.

Upon the second question raised by the petition for reargument, *viz.,* the scope of the power of review of the Superior Court over the orders of the Public Service Commission, I dissent from the opinion of the majority of the Court.

26 *Del. C.* § 192 provides for an appeal from the orders of the Public Service Commission to the Superior Court, and au-

thorizes the Superior Court upon such appeal to "affirm, modify or revise the order of the Commission, in whole or in part, or * * * (to) remand the cause to the Commission for rehearing, in whole or in part." This section must be read in conjunction with 26 *Del. C.* § 183(b) which directs the Commission to make its findings "in sufficient detail to enable the (superior) court on appeal to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence."

These two particular statutory provisions confer upon the Superior Court broad powers when sitting in review of the orders of the Public Service Commission. No other conclusion is possible. The Superior Court is directed to determine whether or not proper weight was given by the Commission to the evidence before it, and also to "determine the controverted question" and to affirm, modify or revise the orders of the Commission in whole or in part, or to remand in whole or in part, for further hearing.

The majority of this Court interprets this particular statutory language as requiring the Superior Court, upon making a determination that the Commission has committed error, to remand the entire cause to the Commission for rehearing. By this construction of the statutory provisions, the majority has emasculated the clear intention of the Legislature to provide a flexible review of the orders of the Public Service Commission. The majority in effect has ruled that the powers of the Superior Court sitting in review of the Public Service Commission are only those powers any appellate court has inherently. The result reached ignores the grant of authority to the Superior Court to determine the proper weight to be given the evidence and "to determine the controverted question".

The majority finds an analogy between the appeal provisions of 26 *Del. C.* §§ 183(b) and 192 and those of 19 *Del. C.* § 2350(b) allowing an appeal to the Superior Court from an award of the Industrial Accident Board. Upon the basis of this

supposed analogy the majority concludes that the powers of the Superior Court sitting in review are the same in both instances, and since on appeal from the Industrial Accident Board the Superior Court refuses to make an examination of the facts except to look for support in them for the Board's findings, *Wright v. American Brake Shoe Co.*, 8 *Terry* 299, 90 *A.* 2d 681, the same rule obtains with respect to appeals from the Public Service Commission. This supposed analogy, however, is demonstrated to be an illogical conclusion for several reasons.

First, 26 *Del. C.* § 183(b) specifically authorizes the Superior Court to determine on appeal from the Public Service Commission the proper weight to be given the evidence in the record. 19 *Del. C.* § 2350(b), however, contains no similar grant of authority to the Superior Court sitting in review of awards of the Industrial Accident Board. The majority does not explain how this difference in the reviewing powers of the Superior Court fits into its supposed analogy.

Second, the Public Service Commission and the Industrial Accident Board are administrative bodies with inherently different functions and methods of procedure. The Industrial Accident Board is a quasi-judicial Board performing judicial functions. It determines issues raised by litigants before it. It sits as an impartial referee. In many instances, the issues are tried before it by counsel representing the litigants. Appeals from the Industrial Accident Board are taken by the losing litigant and opposed by the successful litigant. The Industrial Accident Board is not a party to the cause which it decides. On the other hand, the Public Service Commission is not a quasi-judicial body at all, but an administrative body exercising delegated legislative powers. On its own motion, it may initiate the cause it has to decide. It represents the state. It retains its own counsel to present the state's side of the cause. It acts as litigant, lawyer and judge in the determination of the cause initially. It is a necessary party to an appeal taken from its orders and, as a matter of fact, it appears before this Court as appellant in this cause. The major-

ity brushes aside this distinction in the nature of the two bodies as being of no consequence, yet this distinction is considered significant by some courts as I will point out later on.

Third, the statutes providing for review of the actions of these two administrative bodies in themselves are different in defining the powers of the Superior Court sitting in review.

The power of the Superior Court on appeal from the Industrial Accident Board is limited by the authority given it to "reverse, affirm, or modify the award of the Board, or remand the cause to the Board for a rehearing." In the case of appeals from the Public Service Commission, however, the Superior Court is authorized to "affirm, modify or revise * * * in whole or in part". The majority says that "revise" means the same as "modify". If the word "revise" is synonymous with the word "modify", it may properly be asked why both words were included in the appeal section of the Public Service Commission Act. Certainly, there must have been some purpose in including both words. As a matter of fact, the words are not synonymous. The word "revise" is defined, *inter alia,* as "to make a new, amended, improved, or up-to-date version of; to subject to revision." Its synonyms are: correct, rectify, emend, remedy, redress, amend and reform. "Modify", on the other hand, is defined as "to make somewhat different; vary; as, to modify the details of a plan." Its synonyms are: change, alter and vary. There is, therefore, a difference in meaning between the two words and the Legislature in providing review of the actions of the Public Service Commission by revision must have intended a more flexible means of review than is the case with respect to the Workmen's Compensation Board.

Thus, a comparison of the two statutes and the nature of the Public Service Commission and the Industrial Accident Board demonstrates that an attempt to draw an analogy from one to govern the other is unwarranted. This conclusion finds support in the decisions of courts of other jurisdictions.

In *Petition of Public Service Coordinated Transport,* 5 *N. J.* 196, 74 *A.* 2d 580, the Supreme Court of New Jersey had before it for review the reasonableness of rates fixed by the Board of Public Utility Commissioners. Recognizing that rate-making is a legislative and not a judicial function, and that the Legislature had delegated its rate-making power, the court, nevertheless, held that when the reasonableness of a fixed rate is challenged, a reviewing court is in duty bound to weigh the evidence and resolve for itself the issue of reasonableness irrespective of the findings of the Commission in that respect. The only limitation upon the exercise of this reviewing authority is that courts are not permitted to merely substitute their own judgment for that of the legislative body.

Similarly, in *State v. Hampton Water Works Co.,* 91 *N. H.* 278, 18 *A.* 2d 765, 19 *A.* 2d 435, the Supreme Court of New Hampshire, while recognizing the training and experience of the members of a Commission fixing rates, nevertheless, examined for itself the record made before the Commission not only for errors of law but to satisfy itself from a clear preponderance of the evidence that the rates fixed were in fact unjust and unreasonable. The court then made its own determination of fair value of the utility's property and remanded the cause for further proceedings consistent with its finding.

See, also, *General Foods Corp. v. Brannan,* 170 *F.* 2d 220; *Manlowe Transfer & Distributing Co. v. Department of Public Service,* 18 *Wash.* 2d 754, 140 *P.* 2d 287, 155 *A. L. R.* 928, and *East Ohio Gas Co. v. Public Utilities Comm.,* 133 *Ohio St.* 212, 12 *N. E.* 2d 765.

The foregoing authorities indicate that a reviewing court as a general proposition is not entirely helpless to correct the errors of an administrative body to which legislative authority to fix rates has been delegated, even though the errors committed be those of fact as well as law.

I think the statute confers upon the Superior Court broad powers on appeal to correct the errors of the Public Service

Commission. These powers are to be exercised in the sound judicial discretion of the Superior Court. Depending on the state of the record before it, and the controverted question to be determined, the Superior Court in its discretion must tailor its own action to fit the particular circumstances of the cause. If the record presented permits of the final settlement of the controverted question, the Superior Court should end the matter. If, on the other hand, further hearing is necessary, the Superior Court should remand the cause to the Commission. Needless to say, the abuse by the Superior Court of its discretion in this respect is reviewable by this Court.

What was the state of the record before the Superior Court? There was no basic conflict of fact between the Commission and the Company. Indeed, all of the basic facts presented to the Commission were obtained from the Company's records. The sole controversy presented for decision was one of theory. The Commission's counsel argued that the fair value of the Company's property must predominantly reflect the original cost depreciated of the Company's plant. The Company, on the other hand, urged that the fair value must reflect predominantly the reproduction cost depreciated of its plant. The Commission accepted neither theory but arbitrarily reached a conclusion which on the record was an unjustified compromise between two conflicting theories. The Superior Court examined the record and concluded that the Commission's theory was wrong and that the Company's theory was right. With this conclusion, the majority of this Court now agrees.

Inasmuch as this ruling against the Commission made necessary the adoption of the opposing theory in view of the fact that the record made before the Commission permitted only this choice of alternatives, in my opinion the Superior Court quite properly went ahead and entered an order directing that the alternative theory be given effect. In so doing, it is true that certain adjustments were made by the Superior Court in the estimates of reproduction cost presented by the Company. Concerning these corrections, however, there can be no real dispute.

The Superior Court fixed a fair value by taking 90% of the Company's reconstruction cost figures in order to compensate for criticisms made of those figures by the Commission's expert witnesses. The result would yield a net income after taxes to the Company of approximately $1,650,000.

Thus, applying the test of prospective earnings based upon an estimated fair value, it appears that the result reached by the Superior Court is sufficiently close to the anticipated income requirements of the Company as to warrant the conclusion that it is just and reasonable. Under the circumstances, therefore, I think the Superior Court was correct in exercising its sound discretion to save time and expense and to end litigation. It did for the Commission that which the Commission will probably have to do upon the remand of this cause.

In my opinion, there has been no showing of abuse of discretion on the part of the Superior Court, and, accordingly, I think that its judgment should be affirmed.

CAREY, Judge (concurring in part and dissenting in part).

I concur with that part of Justice BRAMHALL's opinion holding that the Superior Court erred in establishing its own rate base in this case. I disagree with the reversal of the Commission's finding as to the rate base.

It may well be that the opinion of July 24 attributed to appellee certain contentions which were not contained in appellee's original briefs. I would be willing to accept a modification of that opinion in those respects. Moreover, it should be made clear that nothing in that opinion was meant to indicate either approval or disapproval of the Company's traditional dividend rate; this was not questioned at the hearing and is not an issue in the case. While the original opinion should be perhaps revised in some respects, nothing brought out in reargument convinces me that there should be any change in the result.

My position is this: (1) the Act does not make the Superior Court an appellate administrative or legislative body; (2) that

Court should not reverse the Commission unless it has violated some constitutional provision, ignored some statutory requirement or abused its discretion; *Central Maine Power Co. v. Public Utilities Commission, Me.,* 109 *A.* 2d 512; (3) none of those grounds for reversal has been shown to exist in this case with respect to the rate base, save in the disallowance of anything for working capital; (4) the Commission having made an error of law in excluding working capital, and the Court having pointed out that mistake, the Commission rather than the Court is the proper body to fix the amount thereof in the first instance.

Rates consist of a prognostication based largely upon estimates. In any given case, no one certain figure can be identified as the only correct rate base. If either the base or the rate of return is so slow as to amount to confiscation, then the utility's constitutional rights are violated. Likewise, there are upper limits for these figures beyond which the public would be harmed. So long as a Commission stays within those limits, a Court of Law has no business upsetting the Commission's action unless there be a statutory violation or an abuse of discretion. To me the important question in this case is whether the Commission's action was within what some Courts have called "the zone of reasonableness".

Whether or not some of us misunderstood appellee's original argument in this Court, its present contention is summarized in these words:

"The present fair value of the utility's property must be determined from the evidence in each case, and all elements of value must be given 'such weight * * * as may be just and right in each case.' Where, as in this case, the present price levels are substantially higher than the price levels reflected in the original cost of the utility's property, and where its reproduction cost at present prices, or its original cost trended to present price levels, is fairly and reasonably calculated, then such depreciated reproduction cost or trended original cost is the best evidence of the present fair value of the property and should be given predomi-

nant weight. Under such circumstances a determination of fair value which gives predominant weight to original cost does not give weight which is 'just and right' to all the elements of value."

Although appellee's original brief was interpreted—apparently incorrectly—as suggesting that its usual dividend rate justified a higher value than $22,000,000, its present brief strongly repudiates any such suggestion. Moreover, it criticises the language of the original opinion of this Court to the effect that circuity of reasoning is incorporated into the statute by including probable earnings as a factor in determining fair value. On the contrary, it expressly argues that it is fallacious to treat such earnings as evidence of value in a rate-making case, although they may properly be considered in other types of hearings such as mergers.

It, therefore, seems to me now that the Company's only contention (and I see no reason for this Court to seek out other possible contentions) is this: because of present inflated price levels, which are not apt to recede, the Commission placed too much reliance upon original cost and not enough upon replacement cost. The present majority of this Court cites figures from the record tending to support this claim: they say little about the evidence criticising the Company's estimates of reproduction cost; nor about the numerous decisions which have pointed out the inherent weaknesses and unreliability of such estimates; nor about the recent cases in other states approving comparable percentages of increase. *Chesapeake & Potomac Telephone Co. v. Public Service Commission,* 201 *Md.* 170, 93 *A.* 2d 249; *City of Pittsburgh v. Pennsylvania Pub. Util. Comm.,* 174 *Pa. Super.* 4, 98 *A.* 2d 249.

Clearly, the Commission did not ignore the evidence concerning inflated costs; otherwise it would have set a base somewhere near original cost. We do not know whether it took original cost depreciated and added 12% or 19% (depending on what figure it was based), or whether it took reproduction cost depreciated and subtracted 25%. Whatever method was followed,

the result was a substantial, not a mere token, recognition of inflation. That being true, and no confiscation being charged, it is hard to understand how a Court of Law can justifiably say that the Commission failed to give proper weight to the testimony, without further holding that the Court is permitted to substitute its opinion for that of the Commission. By reversing the Commission on this point, this Court is in effect saying to the Commissioners, "You have abused your discretion, or you have violated the statute, in that you did not allow quite as high a percentage of increase for inflated present costs as the Superior Court would have allowed had it fixed the base originally". To me this is simply another way of saying that the Superior Court is an appellate administrative body under this statute, a statement with which I am not in accord.

With respect to working capital, the Commission made a mistake of law and the Superior Court properly reversed. But original determination of the amount to be included under that heading is a function of the Commission, and should not be taken over by the Court.

I would order the case remanded to the Commission with instructions to increase the rate base only by such amount as it determines to be a proper allowance for working capital.